[S.F. No. 24823. Sept. 16, 1985.]

In re the Marriage of ESTHER and ROBERT BUOL.
ROBERT BUOL, Appellant, v.
ESTHER BUOL, Respondent.

752

**COUNSEL**

T. G. Fitzgerald for Appellant.

Mary Catherine Farley for Respondent.

**OPINION**

**REYNOSO, J.**—May legislation requiring a writing to prove, upon dissolution of marriage, that property taken in joint tenancy form is the separate property of one spouse constitutionally be applied to cases pending before its effective date? We conclude that it may not. Applied retroactively, the statute impairs vested property rights without due process of law.

Esther and Robert Buol married in 1943 and separated in 1977. The Buols had three children together and Esther had one child from a previous marriage.

Robert worked as a laborer until 1970 when he was fired, at least in part, due to alcoholism. He began receiving Social Security total disability payments in 1973. Esther began working in 1954 as a housekeeper, a babysitter and an attendant to elderly women. Since 1959 she has been employed as a nursing attendant at a local hospital.

With Robert's knowledge and consent, Esther put her earnings in a separate bank account.[1] Esther used the money to support the family, and in

---

[1]She also put a $2,000 child support payment she had received from her former husband into the separate account. The separate property status of that sum is uncontested.

1963, purchased a home in San Rafael. Although title was taken in joint tenancy on the advice of the realtor handling the sale, Esther made all mortgage, tax, insurance and maintenance payments out of her separate account. Robert contributed nothing. The original purchase price was $17,500. The home is now valued at approximately $167,500.

The sole issue at trial was the status of the home as separate or community property. Esther testified that she purchased the home with her earnings which Robert had emphasized numerous times were hers to do with what she pleased. She also testified that she never would have gone to work without such an agreement because "that would be more money for him to put into gambling and drinking." In addition, she testified that he had always maintained that the house was hers and that he wanted. no responsibility for it, until after he moved out and started demanding that she sell it so that he could have a share of the proceeds.

Esther's testimony was corroborated by two of the Buols' children, Roy and Judith, Judith's husband, and Esther's brother-in-law. Each remembered many conversations with Robert, alone or in family gatherings, in which he confirmed that the house was Esther's. Robert offered conflicting testimony, but conceded that he considered Esther's earnings to be hers alone, that he borrowed from her occasionally and that she made all the house payments out of her separate account.

Finding that the parties had an enforceable oral agreement (*In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285]) that the earnings and the home were Esther's separate property, the court entered judgment awarding the home to Esther. Robert appealed, contending that there was insufficient evidence to support the finding of an oral agreement.

While the appeal was pending, Civil Code section 4800.1[2] was enacted.[3] Under that section the only means of rebutting the presumption that property acquired during marriage in joint tenancy is community property is by providing evidence of a written agreement that the property is separate property.[4] No writing exists in the instant case.

---

[2]Unless otherwise indicated all further statutory references are to the Civil Code.

[3]In July 1983, Assembly Bill No. 26 was enacted, which added sections 4800.1 and 4800.2 and amended section 5110. (See Stats. 1983, ch. 342, §§ 1-4.)

[4]Section 4800.1 provides: "For the purpose of division of property upon dissolution of marriage or legal separation, property acquired by the parties during marriage in joint tenancy form is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following:

"(a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property.

"(b) Proof that the parties have made a written agreement that the property is separate property."

I

We must determine whether section 4800.1 may be given retroactive effect without offending the state Constitution. It appears that the Legislature intended section 4800.1 to apply retroactively to cases such as the one at bench. Section 4 of Assembly Bill No. 26 states, "This act applies to the following proceedings: [¶] (a) Proceedings commenced on or after January 1, 1984. [¶] (b) Proceedings commenced before January 1, 1984, to the extent proceedings as to the division of property are not yet final on January 1, 1984." (Stats. 1983, ch. 342, § 4.) As the trial court's judgment awarding the $167,500 residence to Esther as her separate property was on appeal as of section 4800.1's January 1, 1984, effective date, the division of property was not yet final. (Code Civ. Proc., § 1049. See *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) Presumably, therefore, section 4800.1 would operate to defeat Esther's separate property interest to the extent it is unprotected by section 4800.2's formula for reimbursing separate property contributions to community assets.[5] Under section 4800.2, only $17,500 would be credited as Esther's separate property; the remaining $150,000 would be attributed to the community.

Legislative intent, however, is only one prerequisite to retroactive application of a statute. Having identified such intent, it remains for us to determine whether retroactivity is barred by constitutional constraints. ■ We have long held that the retrospective application of a statute may be unconstitutional if it is an ex post facto law, if it deprives a person of a vested right without due process of law, or if it impairs the obligation of a contract. (*Rosefield Packing Co.* v. *Superior Court* (1935) 4 Cal.2d 120, 122 [47 P.2d 716]; *San Bernardino County* v. *Indus. Acc. Com.* (1933) 217 Cal. 618, 628 [20 P.2d 673]. See *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371]; *Robertson* v. *Willis* (1978) 77 Cal.App.3d 358, 365 [143 Cal.Rptr. 523].)

---

[5]Section 4800.2, also adopted as part of Assembly Bill No. 26, provides: "In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division. As used in this section, 'contributions to the acquisition of the property' include down payments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property."

■ Retroactive application of section 4800.1 would operate to deprive Esther of a vested[6] property right without due process of law. (Cal. Const., art. I, § 7.) At the time of trial, Esther had a vested property interest in the residence as her separate property. (Cf. *Bouquet, supra,* 16 Cal.3d at p. 591; *Addison* v. *Addison* (1965) 62 Cal.2d 558, 566 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391].) The law had long recognized that "separate property . . . [might] be converted into community property or *vice versa* at any time by oral agreement between the spouses. [Citations.]" (*Woods* v. *Security-First National Bank* (1956) 46 Cal.2d 697, 701 [299 P.2d 657]. See also *Beam* v. *Bank of America* (1971) 6 Cal.3d 12, 25 [98 Cal.Rptr. 137, 490 P.2d 257].)

■ ■■■ The Buols had such an agreement as to Esther's earnings and the home she purchased and maintained with those earnings.[7] ■ "The status of property as community or separate is normally determined at the time of its acquisition." (*Bouquet, supra,* 16 Cal.3d at p. 591; *Trimble* v. *Trimble* (1933) 219 Cal. 340, 343 [26 P.2d 477].) Such status is not dependent on the form in which title is taken. (*Machado* v. *Machado* (1962) 58 Cal.2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55].)

■ At all relevant times—when Esther purchased the home, during trial and when the trial court entered judgment for Esther—proof of an oral agreement was all that was required to protect Esther's vested separate property interest. (See *Lucas, supra,* 27 Cal.3d 808; *Machado, supra,* 58 Cal.2d 501.) Section 4800.1's requirement of a writing evidencing the parties' intent to maintain the joint tenancy asset as separate property operates to substantially impair that interest.

Two Courts of Appeal have summarily rejected the contention that section 4800.1 directly impairs vested property rights, finding instead that the mea-

---

[6]"The word vested assumes different meanings in different contexts. [Citation.] We use the word vested here to describe property rights that are not subject to a condition precedent." (*Bouquet, supra,* 16 Cal.3d at p. 591, fn. 7.)

[7]Robert contends that the record does not support the trial court's finding that the parties had such an agreement. This contention is without merit. "In reviewing the sufficiency of the evidence . . . . '[T]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted' to support the trial court's findings. [Citations.]" *Estate of Leslie* (1984) 37 Cal.3d 186, 201 [207 Cal.Rptr. 561, 689 P.2d 133].

Esther and several family members testified to countless statements on Robert's part that the money and the house belonged to Esther. Even Robert himself testified that he considered Esther's earnings to be her property and borrowed from her with that understanding. It is undisputed that Esther made the downpayment and all the house payments from her separate account. Despite Robert's testimony that he had no agreement with Esther that the house was her separate property, the trial court's conclusion to the contrary is supported by substantial evidence.

sure "merely alters the evidentiary burden of proof where a husband and wife take property by a joint tenancy deed." (*In re Marriage of Martinez* (1984) 156 Cal.App.3d 20, 30 [202 Cal.Rptr. 646]. See also *In re Marriage of Taylor* (1984) 160 Cal.App.3d 471, 474 [206 Cal.Rptr. 557]; *In re Marriage of Benart* (1984) 160 Cal.App.3d 183, 188, fn. 2 [206 Cal.Rptr. 495].)[8] This literal reading of the statute without due consideration for its practical application to proceedings initiated prior to its effective date, unnecessarily exalts form over substance, substantially impairing vested property rights along the way.

■  While the Legislature generally is free to apply changes in rules of evidence or procedure retroactively when no vested rights are involved, it is not so unrestrained when these changes directly affect such rights. (See e.g., *Augustus* v. *Bean* (1961) 56 Cal.2d 270 [14 Cal.Rptr. 641, 363 P.2d 873] [no vested right in remedy in place prior to contribution by joint tortfeasors]; *Owens* v. *Superior Court* (1959) 52 Cal.2d 822 [345 P.2d 921, 78 A.L.R.2d 388] [no vested right in more limited scope of preamendment long arm statute]; *San Bernardino County* v. *Indus. Acc. Com.*, *supra*, 217 Cal. 618 [amendment designed to prevent injured employee from realizing double recovery impairs no substantive right]; *Los Angeles* v. *Oliver* (1929) 102 Cal.App. 299 [283 P. 298] [vested right to just compensation in condemnation proceeding not affected by change in method of computing amount due].)

The answer to the question whether a particular statute is "merely evidentiary" or "purely procedural" is not always to be found in the statutory language. " 'Alteration of a substantial right . . . is not merely procedural, even if the statute takes a seemingly procedural form.' " (*People* v. *Smith* (1983) 34 Cal.3d 251, 260 [193 Cal.Rptr. 692, 667 P.2d 149], quoting *Weaver* v. *Graham* (1981) 450 U.S. 24, 29, fn. 12 [67 L.Ed.2d 17, 23, 101 S.Ct. 960].) "Destroying enforcement of a vested right is, . . . tantamount to destroying the right itself." (*Baldwin* v. *City of San Diego* (1961) 195 Cal.App.2d 236, 240 [15 Cal.Rptr. 576].) We must, therefore, extend our analysis beyond the Legislature's chosen evidentiary language—"this presumption is a presumption affecting the burden of proof"—and focus upon the realities of retroactive application of the statute.

■  Applied retroactively, section 4800.1 unquestionably is substantive. A statute is substantive in effect when it "imposes a new or additional

---

[8]Several Courts of Appeal have assumed section 4800.1 applies retroactively without addressing the issue whether such application is constitutional. (See, e.g., *In re Marriage of Huxley* (1984) 159 Cal.App.3d 1253 [206 Cal.Rptr. 291]; *In re Marriage of Koppelman* (1984) 159 Cal.App.3d 627 [205 Cal.Rptr. 629]; *In re Marriage of Anderson* (1984) 154 Cal.App.3d 572 [201 Cal.Rptr. 498]; *In re Marriage of Neal* (1984) 153 Cal.App.3d 117 [200 Cal.Rptr. 341].)

liability and substantially affects existing rights and obligations." (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 395 [182 P.2d 159].) Section 4800.1 imposes a statute of frauds where there was none before, penalizing the unwary for relying upon the law as it existed at the time the property rights were created rather than at the time dissolution proceedings were already underway. This paradoxical approach is aptly illustrated by the *Martinez* court's gratuitous offer to remand that case "in fairness to [the husband] . . . for a hearing at which he shall have the opportunity to prove a written agreement in accordance with section 4800.1." (*Id.*, 156 Cal.App.3d at p. 30.) Understandably, the court refrains from suggesting just how the husband might go about creating the document that is missing solely because it was never required to prove a separate property interest under former law.

The statute does much more than simply articulate the means by which the community property presumption might be rebutted. Insofar as it applies retroactively, the statute imposes an irrebuttable presumption barring recognition of the vested separate property interest. In the case at bar, and all similar proceedings instituted prior to January 1, 1984, the time for executing a written agreement as to the character of joint tenancy marital property has long passed. By eliminating the means by which one might prove the existence of the vested property right, imposing instead an evidentiary requirement with which it is impossible to comply, section 4800.1 affects the vested property right itself.

In this respect, section 4800.1 is virtually indistinguishable from the "substantive" measure considered in *Vegetable Oil Products Co.* v. *Superior Court* (1963) 213 Cal.App.2d 252 [28 Cal.Rptr. 555], which also purported to impose a writing requirement after the fact. In that case, a worker, injured while completing a project on Vegetable Oil's premises, brought suit against Vegetable Oil for personal injury. The trial court denied Vegetable Oil's motion to file a cross-complaint against the employer for indemnification based on the employer's contributory negligence, because Labor Code section 3864, adopted after the injured worker filed suit, barred such indemnity absent a written indemnification agreement predating the injury.

The Court of Appeal reversed, concluding that retroactive application of the statute would contravene due process. (*Id.*, at p. 258.) Because the parties' legal relationship was established on the date of the injury, Vegetable Oil's indemnification rights accrued before the legislation became effective. " 'Where a statute operates immediately to cut off an existing remedy and by retroactive application deprive a person of a vested right, it is ordinarily invalid because it conflicts with the due process clauses of the federal and state constitutions.' " (*Ibid.*, quoting *California Emp. etc. Com.* v. *Payne*

(1947) 31 Cal.2d 210, 215 [187 P.2d 702]. Accord *Wells Fargo & Co.* v. *City etc. of San Francisco* (1944) 25 Cal.2d 37, 41 [152 P.2d 625]; *Wexler* v. *City of Los Angeles* (1952) 110 Cal.App.2d 740, 747 [243 P.2d 868].)

Notwithstanding the language used in section 4800.1, that measure imposes the same impossible burden declared to be unconstitutional in *Vegetable Oil Products.* (See also *General Ins. Co.* v. *Commerce Hyatt House* (1970) 5 Cal.App.3d 460, 469-471 [85 Cal.Rptr. 317] [statutory amendment which would alter contract rights to require written notice of intent to invoke particular contract right does not apply retroactively].) In each instance, the party attempting to assert a vested right is precluded from doing so by imposition of a writing requirement long after any opportunity to obtain such a writing has passed. To the extent that section 4800.1 makes such insurmountable demands on vested property rights, that it does so under the guise of an evidentiary rule is of little avail. Applied retroactively, section 4800.1 is a substantive measure which directly impairs vested property rights. (Cf. *Lane* v. *Wilson* (1939) 307 U.S. 268 [83 L.Ed. 1281, 59 S.Ct. 872] [onerous procedural requirements handicapping Blacks' ability to exercise voting rights are unconstitutional].)

Section 4800.2's provision for reimbursement of the separate property contributions to what now is conclusively presumed to be community property regardless of the parties' intent, does little to neutralize section 4800.1's adverse effect on vested property rights. In the instant case, the trial court ruled that the $167,500 home was Esther's separate property. Retroactive application of the new statutory scheme would decrease that separate property interest to only $17,500. Esther would not be reimbursed for interest payments on the mortgage (which would have constituted virtually all of her monthly payments during the early years of the loan), taxes, insurance payments or maintenance costs. The remaining $150,000 would be credited to the community, an interest which arose only after judgment was entered by the trial court. Robert would thus receive a windfall of $75,000. Moreover, because the house represents the full extent of Esther's property, she would be forced to sell it to satisfy Robert's claim. As this case all too painfully demonstrates, section 4800.2 may provide only superficial protection against section 4800.1's potentially devastating impact upon vested property rights.

## II

■ We turn to the question whether impairment of Esther's vested property right violates due process of law. ■ Vested rights are not immutable; the state, exercising its police power, may impair such rights when considered reasonably necessary to protect the health, safety, morals

and general welfare of the people. (*Bouquet, supra,* 16 Cal.3d at p. 592.) In determining whether a given provision contravenes the due process clause we look to "the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions." (*Ibid.*)

Where "retroactive application is necessary to subserve a sufficiently important state interest" (*Bouquet, supra,* 16 Cal.3d at p. 593), the inquiry need proceed no further. (See *Addison, supra,* 62 Cal.2d at p. 567.) In *Bouquet,* where we validated retroactive application of an amendment to Civil Code section 5118 making the postseparation earnings of both spouses, not just those of the wife, separate property, we emphasized that "[t]he state's interest in the equitable dissolution of the marital relationship supports this use of the police power to abrogate rights in marital property that derived from the patently unfair former law." (*Bouquet, supra,* 16 Cal.3d at p. 594.) As noted in *Bouquet,* we reached the same conclusion in *Addison, supra,* 62 Cal.2d 558, wherein we upheld the constitutionality of retroactive application of quasi-community property legislation despite its interference with the husband's vested property rights.

In both *Bouquet* and *Addison* we identified an important state interest in the "equitable dissolution of the marital relationship" and stressed that retroactive application was necessary to remedy "the rank injustice of the former law." (*Bouquet, supra,* 16 Cal.3d at p. 594; *Addison, supra,* 62 Cal.2d at p. 567.) ■ Thus, these cases support the proposition that the state's paramount interest in the equitable dissolution of the marital partnership justifies legislative action abrogating rights in marital property where those rights derive from manifestly unfair laws. ■ No such compelling reason exists for applying section 4800.1 retroactively. Section 4800.1 cures no "rank injustice" in the law and, in the retroactivity context, only minimally serves the state interest in equitable division of marital property, at tremendous cost to the separate property owner.

As evidence of legislative intent, the Senate reprinted the California Law Revision Commission's Report Concerning Assembly Bill No. 26 in the Senate Journal. (See Sen. Com. on Judiciary Rep. on Assem. Bill No. 26 (July 14, 1983) 3 Sen. J. (1983 Reg. Sess.) pp. 4865-4867.) While the report sheds no light on the Legislature's decision to give the measure retrospective effect, it does elucidate the reasoning behind enactment of section 4800.1. The Senate was concerned that because marital partners often use community property funds to acquire assets taken in joint tenancy without

knowledge of the legal distinctions between the two, and the courts are without jurisdiction to divide joint tenancy property upon dissolution, absent section 4800.1's community property presumption, the courts may be precluded from making "the most sensible disposition of all the assets of the parties." (*Id.*, at p. 4865.) Although section 5110 already contained such a presumption for the single-family residence, the Senate wanted to extend the presumption to all marital property taken in joint tenancy because "spouses frequently hold substantial amounts of their wealth in joint tenancy form, including bank accounts, stocks, and other real property." (*Ibid.*) In addition, the report states that a writing satisfying the statute of frauds is necessary to rebut the community property presumption, but fails to set forth the reasoning underlying that conclusion. (*Id.*, at pp. 4865-4866.)

From this statement of intent we can infer that the Legislature's primary motivation in enacting section 4800.1 was to promote the state's interest in equitable distribution of marital property upon dissolution. We are at a loss to explain, however, how retroactive application of the statute is "necessary to subserve" that interest.

Retroactive application of the writing requirement does not advance the goal of insuring equitable division of community property where, as here, the asset in question is the separate property of one spouse. Moreover, because the writing requirement only applies to joint tenancy property, it fails to achieve uniformity in the division of marital property. ■ The presumption that property taken as "husband and wife" is community property (§ 5110) may still be rebutted by evidence of a contrary oral agreement. (See *Lucas, supra,* 27 Cal.3d at p. 816.) Nontitle property acquired during marriage is presumed to be community property (§ 5110), but may be proved otherwise by tracing alone. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 608-612 [122 Cal.Rptr. 79, 536 P.2d 479].)

Thus, whether or not a spouse will be able to prove that certain property is separate may well depend on happenstance alone.[9] The Legislature and

---

[9]For example, in *Neal, supra,* 153 Cal.App.3d 117, the wife converted the form of title to her home to joint tenancy at the insistence of the lending institution refinancing the property. After the trial court ruled that the home, and a car and some furnishings purchased with the loan proceeds were the wife's separate property, section 4800.1 was enacted and the Court of Appeal reversed. The court held that the house was community property, but found that because the lender was relying on the equity in the home, rather than the parties' income, in making the loan, and the parties had an oral *Lucas* agreement, the loan proceeds were the wife's separate property. Accordingly, the court concluded that the furniture was her separate property. Without access to the vehicle registration, however, the court was uncertain whether the car was separate property. If the registration reads "Patricia *or* Henry" then the car would be deemed to be held in joint tenancy (Veh. Code, §§ 4150.5, 5600.5) and section 4800.1 would apply. If, on the other hand, it reads "Patricia *and* Henry," then section 4800.1 would not apply and the parties' oral agreement would control.

the courts have long been aware that " 'husbands and wives take property in joint tenancy without legal counsel but primarily because deeds prepared by real estate brokers, escrow companies and by title companies are usually presented to the parties in joint tenancy form . . . .' [Citation.]" (*Lucas, supra,* 27 Cal.3d at p. 814.) ■■ Given the lack of uniformity in treatment of marital property presumptions, it seems manifestly unfair to apply section 4800.1 to penalize one marital partner after all is said and done, for making an uninformed legal decision at the insistence of a real estate agent, where retroactivity of the statute advances no sufficiently compelling state interest.

The extent and legitimacy of Esther's reliance on former law is, of course, difficult to gauge with certainty. However, the record is clear that Esther and Robert considered the house to be her property despite the joint tenancy form of title. The decision to take the property as joint tenants was made solely at the suggestion of a realtor. Had existing law required the parties to execute a writing as proof that the property was to remain separate, the likelihood that Esther and Robert would have done so appears great. As it stands, retroactive application of section 4800.1 vitiates Esther and Robert's oral agreement, which the trial court found to be valid and enforceable under existing law, and imposes a new writing requirement with which Esther cannot possibly comply. The parties' legitimate expectations, therefore, are substantially disregarded in favor of needless retroactivity.

Two other policy considerations work against retroactive application of section 4800.1. First, ". . . to the extent the statute furthers a policy of evidentiary convenience, that policy is not served by application of the statute to cases already tried." (*Taylor, supra,* 160 Cal.App.3d 471, 478 (Sims, J. dis.).) This is particularly true in cases, such as the one at bench, where the trial court correctly applied existing law in determining the asset to be separate property. Second, the manifest interest in finality pervading this sensitive area of the law is thwarted by retroactive application of the statute. "The net effect of retroactive legislation is that parties to marital dissolution actions cannot intelligently plan a settlement of their affairs nor even conclude their affairs with certainty after a trial based on then-applicable law." (*Id.,* at p. 479 (Sims, J. dis.).)

We conclude that retroactive application of section 4800.1 would substantially impair Esther's vested property right without due process of law.[10] The state interest in equitable dissolution of the marital partnership is not

---

[10]Holdings to the contrary in the following cases are disapproved: *Taylor, supra,* 160 Cal.App.3d 471; *Benart, supra,* 160 Cal.App.3d 183; *Martinez, supra,* 156 Cal.App.3d 20; *Anderson, supra,* 154 Cal.App.3d 572; *Neal, supra,* 153 Cal.App.3d 117.

furthered by retroactive effect. Retroactivity only serves to destroy Esther's legitimate separate property expectations as a penalty for lack of prescience of changes in the law occurring after trial. Due process cannot tolerate such a result.

The judgment is affirmed.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., Grodin, J., and Lucas, J., concurred.