[No. A024304. First Dist., Div. Five. Jan. 15, 1986.]

In re the Marriage of CHARLOTTE E. and EDWARD J. DELGADO.
CHARLOTTE E. DELGADO, Respondent, v.
EDWARD J. DELGADO, Appellant.

**COUNSEL**

Ralph Yanello and Mary T. Jackson for Appellant.

Paula F. Schmidt for Respondent.

**OPINION**

**KING, J.—** ▮▮ In this case we hold that Civil Code section 4800.1[1] is inapplicable to marital dissolution actions in which the judgment was entered prior to the statute's effective date of January 1, 1984. Thus, where spouses acquired property in joint tenancy pursuant to an oral agreement or understanding that it was to be the separate property of one of them, and a judgment confirming this fact was entered prior to January 1, 1984, the statutory presumption that such property is community, unless there is a writing to the contrary, is inapplicable.

Edward J. Delgado appeals from a postjudgment order in a dissolution proceeding. The order characterized certain real property as being the separate property of his wife Charlotte E. Delgado. The primary issues involve the applicability of section 4800.1. We affirm the judgment.

Charlotte and Edward married in 1965. Charlotte's mother, Eloise Duperroir, owned a two-unit residential building at 2380 and 2382 Bryant Street in San Francisco. Eloise lived in the unit at 2380 Bryant Street. For a number of years Charlotte and Edward lived in the unit at 2382 Bryant Street.

▮ In 1971, Eloise executed a grant deed conveying the property to Charlotte and Edward as joint tenants. Eloise testified at trial that she had been ill and was afraid she might die, and wanted to leave the property to Charlotte alone; she informed her attorney of this desire, and he suggested the joint tenancy designation, the significance of which she did not understand. Eloise testified that she told Edward "very often" that she wanted Charlotte alone to have the property and that Edward did not disagree, and that when the attorney suggested the joint tenancy designation Edward said he did not want his name on the deed and wanted nothing to do with the property.[2]

Eloise made all mortgage, tax and maintenance payments for the property. At some point Charlotte began handling Eloise's finances for her, and Eloise gave Charlotte money to make the house payments. Charlotte and Edward made no payments on the property.

Charlotte filed a petition for dissolution of marriage on May 28, 1980, claiming the Bryant Street building as her separate property. The court

---

[1] Unless otherwise indicated, all further statutory references are to the Civil Code.

[2] The record does not indicate that Eloise ever sued to set aside the deed. The present case is not such an action, but is a dispute between spouses as to their interests in property. Neither party sought to join Eloise as a party to the action.

reserved jurisdiction over the family residence issue and rendered an interlocutory judgment of dissolution on January 26, 1981.

Trial on the family residence issue occurred on September 28, 1981. In a memorandum and notice of intended decision the court found the residence was community property; the court reasoned there was no evidence that Eloise's intention to convey the property solely to Charlotte was communicated to or understood by Edward when the deed was executed.

Charlotte moved for reconsideration. On March 15, 1982, the court granted the motion and rendered an amended memorandum and notice of intended decision finding Edward had no interest in the property. The court explained that it had reviewed Eloise's trial testimony and discovered "ample" evidence that Eloise had communicated her intentions to her attorney and Edward when she executed the deed, so that the community property presumption arising from the form of the deed was overcome.

On August 20, 1983, the court rendered a postjudgment order characterizing the building as Charlotte's separate property.

I.

Edward asserts a twofold challenge to the determination that Charlotte overcame the community property presumption arising from the deed's joint tenancy designation. First, he argues that Eloise's testimony was not weighty enough to establish an agreement or understanding under *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285] that the building was Charlotte's separate property. Second, he argues that a community property characterization is now compelled by section 4800.1, which was enacted while this appeal was pending.

Edward's first argument is meritless. Eloise's testimony was sufficient to establish an agreement or understanding under the law as stated in *Lucas*. Edward expressly asks this court to reweigh the evidence. Under the substantial evidence rule this court lacks authority to do so. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 245-248, pp. 4236-4240.)

Edward's second point is also meritless. Effective January 1, 1984, section 4800.1 establishes a presumption that "property acquired by the parties during marriage in joint tenancy form is presumed to be community property." This presumption is rebuttable only by a statement in the documentary evidence of title or by a written agreement that the property is separate property, neither of which were present here. By uncodified language and legislative history the statute was made applicable to all proceed-

ings which were not final as of the statute's effective date. (Stats. 1983, ch. 342, § 4.) However, for the first time in more than 50 years our Supreme Court has found a family law statute unconstitutional, determining that retroactive application of section 4800.1 would deny due process. (*In re Marriage of Buol* (1985) 39 Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354].)

The decision in *Buol* has created confusion and consternation in the family law bench and bar by failing to answer the question of when section 4800.1 becomes operative. Is it applicable only to cases filed after its effective date of January 1, 1984, only to cases tried after that date, or only to cases where the judgment was entered after that date? The legal analysis of due process in *Buol* supports the argument that section 4800.1 is inapplicable to cases when an oral agreement or understanding took place prior to the effective date of the statute. Until our Supreme Court supplies the answer, the family law bench and bar is left to speculate.[3]

---

[3]The following discussion by one of California's foremost family law commentators aptly describes the dilemma facing the bench and bar in the wake of *Buol*: "*Buol* itself involved a case in which the trial was before January 1, 1984, and the appeal was still pending on that date. The jackpot question is where the *Buol* holding attaches in a timeline as a case progresses. Does the date a case becomes *final* control? The legislature plainly intended 4800.1 to apply to all cases not yet *final* as to property division on January 1, 1984, but the supreme court nixed that plan. The elusive '*Buol* date' could turn out to be the date of judgment, the date of trial, the date the petition is filed, the date the property is 'acquired' in joint tenancy, or the date the oral *Lucas* agreement is made. [¶] *Buol* can be read for any of these dates. At one point the court stated: 'In the case at bar, *and all similar proceedings instituted prior to January 1, 1984,* the time for executing a written agreement as to the character of joint tenancy marital property has long passed.' That seems to attach the holding to the date a petition is filed. Later, quoting from the dissent in *In re Marriage of Taylor* (1985) 160 CA3d 471, 206 CR 557, 1984 CFLR 2596, FIRST ALERT No. F-84-134 [majority approved retroactive application of CC Sec 4800.1] (disapproved in *Buol*), the panel stated, 'to the extent the statute furthers a policy of evidentiary convenience, that policy is not served by application of the statute to cases *already tried.*' [¶] Adding to the confusion is the statement: 'At all relevant times—when Esther purchased the home, during trial and when the trial court entered judgment for Esther—proof of an oral agreement was all that was required to protect Esther's vested separate property interest.' [¶] Of these choices, a strong argument can be made that it is the date the property is purchased as joint tenants or 'acquired' in joint tenancy during marriage via a conveyance from separate property that should control. That is the date when it becomes too late to do anything about the writing requirement of CC Sec 4800.1. [¶] On October 9, 1985, the Assistant Executive Secretary of the California Law Revision Commission asked the court to clarify the scope of its decision. The Secretary takes the position that if the court intended to limit its holding to cases tried before January 1, 1984, and cases pending on that date, so be it, but if the court meant to bar *any* retroactive application of CC Sec 4800.1, new legislation to deal with that problem will be in order. On October 15, the supreme court extended the time to act on the modification request to November 15, 1985." (Cal. Fam. L. Rep. (1985) 2953, italics in original.)

"In our comment to *Buol* (1985 CFLR 2953), we noted that the supreme court had postponed the finality of the opinion to allow time to consider a request for modification. On October 31, 1985, the court denied the modification request and ordered *Buol* final forthwith. The supreme court's refusal to grant the request to limit *Buol* to cases tried before the January 1, 1984, effective date of CC Sec 4800.1 may now be further support for an argument that the statute cannot be applied retroactively even in cases tried *after* January 1, 1984." (Cal. Fam. L. Rep. (1985) 2985, italics in original.)

Because section 4800.1 is inapplicable in the present case, the holding of *Lucas* requires the judgment be affirmed.

## II.

■ Edward also contends the motion for reconsideration should not have been granted because of several procedural deficiencies. He argues the motion was not made within 10 days after knowledge of the court's order as required by Code of Civil Procedure section 1008, the motion did not allege a different state of facts as required by section 1008, and Charlotte should have sought a new trial instead of reconsideration.

These issues are not cognizable on appeal. Edward has not included in the clerk's transcript copies of the motion for reconsideration or any opposition to it, and has not designated a transcript of the oral proceedings on the motion. Thus it is impossible to determine from the record when the motion was filed, what the motion alleged, or whether the motion could be construed as a motion for new trial. From the record we do have, it appears that Charlotte's motion occurred prior to the issuance of an order of judgment, although it was after a memorandum of intended decision. If this is the case the trial judge had not yet made a final determination. In any event, Edward has not sustained his burden of showing error on an adequate record. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 373, p. 4345.)

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.

A petition for a rehearing was denied February 14, 1986.