[No. F005805. Fifth Dist. Nov. 21, 1986.]

In re the Marriage of ALMA I. and BURNICE E. GRIFFIS.
BURNICE E. GRIFFIS, Respondent, v.
ALMA I. GRIFFIS, Appellant.

**COUNSEL**

William A. Hill and Christopher S. Hill for Appellant.

James B. Preston for Respondent.

**OPINION**

**BEST, J.**—In this case we must determine the constitutionality of Assembly Bill No. 625 enacted as chapter 49 of the Statutes of 1985-1986, an urgency statute effective April 10, 1986, which provides that Civil Code[1] sections 4800.1 and 4800.2 apply to all proceedings commenced on or after January 1, 1984, regardless of the date of acquisition of the property. We conclude that application of sections 4800.1 and 4800.2 to property acquired

---

[1]All statutory references are to the Civil Code unless otherwise indicated.

prior to January 1, 1984, would impair vested property rights without due process of law. (Cal. Const., art. I, § 7.)

## STATEMENT OF FACTS

Burnice (husband) and Alma (wife) Griffis were married on November 9, 1979, and husband filed a petition for dissolution of the marriage on May 31, 1984. After marriage, the parties took up residence in a home owned by husband prior to marriage at 615 Divisadero, Visalia, California. Wife received social security benefits prior to marriage, but these stopped when the two were married. Her only source of income during the first three years of marriage was rental income ranging from $265 to $285 per month derived from a separate property residence located in Porterville, California. In 1983, she sold that property, receiving two $2,500 down payments and monthly payments of $387.98. She continued to make payments on a first trust deed on that property in the sum of $80 per month, resulting in a net income from the property of $307.98. Her only other source of income began in 1982 when she turned 62 years old and became entitled to her own social security benefits. She received $189 per month in social security benefits which increased to $202 before trial. At the time of trial, the marriage had been terminated and due to required changes in benefit accounting and delays, her only income was the payment on the promissory note and deed of trust of $387.98.

During the marriage, husband received a pension of $264 per month, but $99.75 of that amount belonged to a former wife. He believed that his former wife was entitled to half of the pension, however, and had divided it evenly with her during this marriage. He also received $475 per month in social security benefits. In addition, he owned promissory notes on which he received installment payments. He received $150 per month on the Nett/Hook note, $200 per month on the Petty note, and $208.40 per month on the Sawtooth note.

Wife entered the marriage with her separate rental property in Porterville, $1,500 in cash and assorted personal belongings not in issue in this appeal. Husband owned a number of items which were stipulated to be his separate property. The 1971 Dodge pickup, the residence at 615 Divisadero, the Nett/Hook, Petty and Sawtooth promissory notes all were acquired before the marriage with separate funds and wife agreed to their characterization as separate property.

Wife deposited the majority of her $1,500 in cash in a separate account at Crocker Bank and depleted that account with payments on the encum-

brance on her rental property and other expenditures and closed this account in 1980. Husband had a separate account at California Federal Savings and Loan. He also owned an account at Hadley Funeral Company which was his separate property, as well as one at the Operating Engineers Credit Union.

The issues at trial regarding division of property related generally to the acquisition of community property with separate contributions from the husband. Many of the factual issues involved purchases from a joint checking account in the name of both husband and wife at First Interstate Bank (the joint account). Wife testified that it was a new account opened by them together and that husband deposited both of their incomes into the account. She also said that it was her understanding, based on discussions with husband, that everything deposited in that account belonged to both of them. Husband testified that this account was his only checking account, that it was created when he added her name to his own account, and that this was done for the purpose of allowing her to write checks for groceries and things of that nature. He further testified that all the money in this account came from his own separate funds. Although wife testified that she endorsed the checks she received during the marriage and gave them to him to deposit, he testified that he would pay her the amount of each check when she endorsed it to him from cash in his pocket at that moment.

During the marriage, husband purchased a new engine for a 1977 Gilly autobus, which was his separate property, from funds in the joint account. The new engine cost approximately $8,000. A 1979 Ford Granada was purchased during the marriage and titled jointly and was paid for from funds in the joint account. Husband also sold a Volkswagen automobile to wife's daughter and bought it back from her soon after with funds in the joint account. Husband also built a utility trailer during the marriage, and part of the materials were purchased with funds from the joint account.

There were also issues relating to investments made during the marriage. In 1981, the parties purchased real property located at 2111 East Wescott, Visalia, California. Title was taken in joint tenancy. The cash down payment of $17,347.26 came from husband's separate account at California Federal. In addition, the parties assumed two obligations which encumbered the property. One was a promissory note to Kissell for $17,993.41 and the other a note to Western Loan Services for approximately $17,000. They sold that property to the Wimers in 1983, receiving as part of the consideration a promissory note in the sum of $47,000. The Wimers assumed the Kissell note, but the note to Western Loan Services was paid off at that time by husband. The payoff value of that loan was $12,786.38 and husband had

record evidence that $8,657.56 of that amount was paid from his separate funds in the Operating Engineers Credit Union. He testified that the remaining amount of the payoff was paid from the joint account.

The parties also purchased an interest in a promissory note in 1981, referred to as the Weaver note. Approximately two years later, they purchased the remaining interests and owned the entire note. This note was purchased with $4,000 of husband's separate funds in his California Federal account and an additional $8,000 from the joint account.

The trial court found that the joint account was "almost exclusively funded" from the separate property funds of husband, and the court disbelieved the allegations of wife that any of her funds went into this account. Having made this finding, the court denied wife's request for reimbursement of contributions from the joint account of $3,832 toward use on husband's separate property home. Similarly, the Gilly autobus engine, the 1961 Volkswagen, part of the utility trailer, the Ford Granada, the Wimer note and the Weaver note were subjected to reimbursement of traceable separate property contributions.

Both husband and wife received their separate property. Neither party was awarded spousal support and each was to pay their respective attorney fees and costs.

## DISCUSSION

■ Prior to January 1, 1984, the effective date of sections 4800.1 and 4800.2, when a spouse changed a separate bank account to a joint tenancy account in both spouses' names, a presumption of equal ownership arose which could be overcome only by proof of a common understanding or agreement that the character of the property was to be other than joint tenancy. (*In re Marriage of Hayden* (1981) 124 Cal.App.3d 72, 77-78 [177 Cal.Rptr. 183].) It was also "well-established that, absent an agreement to the contrary, separate property contributions to a community asset were deemed gifts to the community. [Citations.]" (*In re Marriage of Fabian* (1986) 41 Cal.3d 440, 446 [224 Cal.Rptr. 333, 715 P.2d 753].)

Section 4800.1 provides: "For the purpose of division of property upon dissolution of marriage or legal separation, property acquired by the parties during marriage in joint tenancy form is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following:

"(a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property.

"(b) Proof that the parties have made a written agreement that the property is separate property."

The trial court found that all of the funds deposited in the joint account at First Interstate Bank were from husband's separate property and this finding is supported by substantial evidence. There being no evidence of an understanding or agreement, either oral or written, that the funds in the joint account were to remain husband's separate property, the trial court properly found that the funds in the account were community property. This result would follow from the application of either section 4800.1 or the law as it existed prior to January 1, 1984. Wife, therefore, "acquired" a vested interest in those funds in the joint account and in all property subsequently purchased or improved with those funds. (See *In re Marriage of Fabian, supra,* 41 Cal.3d at pp. 445-446; *In re Marriage of Buol* (1985) 39 Cal.3d 751, 757 [218 Cal.Rptr. 31, 705 P.2d 354]; *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 591 [128 Cal.Rptr. 427, 546 P.2d 1371].) ▇▇▇ The trial court, however, applying section 4800.2, traced husband's separate property through the joint account to subsequently purchased or improved property, confirmed the subsequently purchased property to husband as his separate property, ordered husband reimbursed for his separate contributions to improved community property, and denied wife reimbursement of funds from the joint account used to improve husband's separate property.

Section 4800.2 provides: "In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division. As used in this section, 'contributions to the acquisition of the property' include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property."

In our view, application of section 4800.2 to property acquired prior to January 1, 1984, deprived wife of vested property rights without due process of law.

Prior to its deletion in 1983, the following provision was contained within section 5110: "When a single-family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon dissolution of marriage or legal separation only, the presumption is that such single-family residence is the community property of the husband and wife."

In *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285], our Supreme Court held the above presumption could be overcome only by proof of a contrary agreement or understanding between the parties. The court also reaffirmed the well-settled rule that a "'party who uses his separate property for community purposes is entitled to reimbursement from the community or separate property of the other only if there is an agreement between the parties to that effect.' [Citations.]" (*Id.,* at p. 816.)

In July 1983, the Legislature enacted Assembly Bill No. 26 which deleted the above quoted provision from section 5110 and added sections 4800.1 and 4800.2. (See Stats. 1983, ch. 342, §§ 1-4, pp. 1538-1539.) Section 4 of Assembly Bill No. 26 provided: "This act applies to the following proceedings: (a) Proceedings commenced on or after January 1, 1984. (b) Proceedings commenced before January 1, 1984, to the extent proceedings as to the division of the property are not yet final on January 1, 1984."

In *In re Marriage of Buol, supra,* 39 Cal.3d 751, our Supreme Court held that applying section 4800.1 retroactively to cut off property rights created by an oral agreement between the parties (pursuant to the holding in *Lucas*) would deprive a party of vested property rights without due process of law in violation of article I, section 7 of the Constitution of California. In so holding, the court stated, "The state interest in equitable dissolution of the marital partnership is not furthered by retroactive effect." (*In re Marriage of Buol, supra,* at pp. 763-764.)

In *In re Marriage of Fabian, supra,* 41 Cal.3d 440, our Supreme Court held that retroactive application of section 4800.2 would impair vested property rights without due process of law.

In *Fabian,* as in the instant case, the husband had contributed separate property to a community property purchase. The trial court found that there was no promise or agreement between the parties that the husband should be reimbursed; therefore, it was a gift of separate funds to the community assets. While the husband's appeal was pending, section 4800.2 was enacted. Our Supreme Court reviewed the legislative history of section 4800.2 and concluded that retroactive application was not necessary to subserve a suf-

ficiently important state interest; the judgment that reform was needed because fairness would be better served by turning the *Lucas* presumption on its head was not a significant state interest; no discernible benefit to the state's interest in equitable dissolution of the marital partnership was gained; and the disruptive effect of retroactive application was substantial. (*In re Marriage of Fabian, supra,* 41 Cal.3d at pp. 448-451.)

About a month after *Fabian* was filed, our Governor signed Assembly Bill No. 625, chapter 49 of the Statutes of 1985-1986,[2] Regular Session, amending section 4 of chapter 342 of the Statutes of 1983. The bill was enacted as an urgency statute effective when signed by the Governor on April 10, 1986. It basically provides sections 4800.1 and 4800.2 are now "applicable to proceedings commenced on or after January 1, 1984, re-gardless of when the property is acquired or the date of any agreement affecting the property." The statute states that this is necessary to preserve the public peace, health, and safety (within the meaning of art. IV of the Const.) by curing a serious problem of inequitable property division at dissolution of a marriage.

The issue of whether section 4800.2 can be constitutionally applied in a dissolution action filed subsequent to January 1, 1984, involving property acquired prior to that date, is one of first impression. The decisions in *Buol* and *Fabian* have not answered this question and, instead, have created confusion and consternation in the family law bench and bar. (See *In re*

---

[2]The bill provides as follows: "SECTION 1. Section 4 of Chapter 342 of the Statutes of 1983 is amended to read:

"Sec. 4. This act applies to proceedings commenced on or after January 1, 1984, regardless of the date of acquisition of property subject to the proceedings or the date of any agreement affecting the property.

"SEC. 2. This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are:

"Sections 4800.1 and 4800.2 of the Civil Code were enacted by Chapter 342 of the Statutes of 1983 and applied immediately to all family law proceedings not yet final on January 1, 1984, its effective date, in order to cure a serious problem in the law governing division of assets at dissolution of marriage (See Report of Senate Committee on Judiciary on Assembly Bill 26, 83 Senate Journal 4865, July 14, 1983). The Supreme Court in In re Marriage of Buol, 39 Cal.3d 751, 705 P.2d 354, 218 Cal.Rptr. 31 (1985), held that this legislation cannot be applied to pending litigation in some circumstances, but the precise scope of the decision is unclear.

"The Buol decision has caused confusion among family law judges and lawyers as to what law governs in a heavily litigated area in which important property rights are affected. The decision also frustrates the intent of the Legislature to correct a serious problem in the law that is causing inequitable treatment of many parties.

"This act is intended to resolve the confusion caused by Buol and to reaffirm the need for immediately applicable legislation, to the extent constitutionally permissible, in order to assure all litigants of equitable treatment upon dissolution of marriage. Any further delay will accentuate unreasonably the current confusion and problems in this area of the law."

*Marriage of Delgado* (1986) 176 Cal.App.3d 666, 670 [222 Cal.Rptr. 119].) The following discussion by one of California's foremost family law commentators aptly describes the dilemma facing the bench and bar in the wake of *Buol* and *Fabian:* "*Fabian* leaves it unclear where in the procedural time line the retroactive application of CC § 4800.2 becomes unconstitutional. . . . Without references to cases filed after January 1, 1984, the *Fabian* court did mention its *Buol* holding, noting: 'In holding in *Buol* that application of section 4800.1 to dissolution proceedings commenced prior to January 1, 1984, impaired vested property interests without due process . . . .'

"Thus, we can infer that *Buol* and *Fabian* stand for the same proposition—CC §§ 4800.1 and 4800.2 cannot be applied in any case pending before January 1, 1984.

"Applying the reasoning of *Buol* and *Fabian* to proceedings not yet pending on January 1, 1984, is no simple task, but the better view seems to be to utilize the date the property is acquired during the marriage. This is the date when, in the case of CC § 4800.1, it becomes too late for the separatizer to get a writing rebutting the community-property presumption, and, in the case of CC § 4800.2, it becomes too late for the community to get a written waiver of the automatic right to reimbursement.

"As in *Buol,* there is language in *Fabian* that would support other dates as the constitutionally acceptable starting point for the application of CC § 4800.2. At one point, the court stated that from the 'time of purchase, therefore, Kathleen had a vested property interest in the motel as community property. . . . This vested interest entitled Kathleen, at the time the trial court entered the interlocutory judgment, to half of the Villa Viejo . . . .' Still other candidates for the application of CC § 4800.2 are the date of any agreement regarding the property in question; the date of separation; or, pursuant to ambiguous footnote 12, some might argue that the statute *can* be applied to cases filed after January 1, 1984, without constitutionally violating a party's vested rights." (Adams & Sevitch, Cal. Family Law Practice (1986) § D.11.5.3, subd. a., pp. D-12–D-13.)

In the present case, all of the property under dispute was acquired at a time when the *Lucas* rule was still in effect. "The status of property as community or separate is normally determined at the time of its acquisition." (*In re Marriage of Bouquet, supra,* 16 Cal.3d 583, 591; *In re Marriage of Buol, supra,* 39 Cal.3d at p. 757.) Since there was no agreement to the contrary, that property became community property as soon as it was acquired pursuant to the *Lucas* presumption. Moreover, since there is no evidence the property rights of wife were subject to a

condition precedent, they became vested property rights at the time of acquisition. "The word vested assumes different meanings in different contexts. [Citation.] We use the word vested here to describe property rights that are not subject to a condition precedent." (*In re Marriage of Bouquet, supra,* at p. 591, fn. 7; *In re Marriage of Buol, supra,* at p. 757, fn. 6.)

■ If a property right vests before the enactment of a statute, such a right may not be altered except in those rare instances when it is necessary to promote a significantly important state interest.

"Retroactive legislation, though frequently disfavored, is not absolutely proscribed. The vesting of property rights, consequently, does not render them immutable: '"Vested rights, of course, may be impaired 'with due process of law' under many circumstances. The state's inherent sovereign power includes the so-called 'police power' right to interfere with vested property rights whenever reasonably necessary to the protection of the health, safety, morals, and general well being of the people. . . . The constitutional question, on principle, therefore, would seem to be, not whether a vested right is impaired by a marital property law change, but whether such a change reasonably could be believed to be sufficiently necessary to the public welfare as to justify the impairment."' [Citations.]" (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 592, fns. omitted.)

■ On the issue of whether retroactive application of sections 4800.1 and 4800.2 as specified by Assembly Bill No. 625, the emergency legislation enacted in 1986, reasonably could be believed to be sufficiently necessary to the public welfare as to justify the impairment of vested property rights, we are bound by the Supreme Court's holdings in *Buol* and *Fabian.*

"We conclude that retroactive application of section 4800.1 would substantially impair [wife's] vested property right without due process of law. The state interest in equitable dissolution of the marital partnership is not furthered by retroactive effect. Retroactivity only serves to destroy [wife's] legitimate separate property expectations as a penalty for lack of prescience of changes in the law occurring after trial. Due process cannot tolerate such a result." (*In re Marriage of Buol, supra,* 39 Cal.3d at pp. 763-764, fn. omitted.)

"Because [husband] failed to evidence any intent, by written or oral agreement during marriage, that his contributions to the community asset were to remain separate property, the law in effect at that time presumed a gift to the community. Applied retroactively, section 4800.2 would reward a claim that the absence of a writing now requires the opposite result—the funds must be characterized as separate property. This retroactive, 180-

degree departure from former law violates the parties' legitimate expectations while failing to advance the state interest in equitable dissolution of the marital partnership. As a result, retroactive application of section 4800.2 to cases pending on January 1, 1984, impairs vested property interests without due process of law." (*In re Marriage of Fabian, supra,* 41 Cal.3d at pp. 450-451, fns. omitted.)

We must presume the Supreme Court considered every possible state interest in *Buol* and *Fabian,* including those stated by the Legislature in the new law. In fact, in *In re Marriage of Buol, supra,* 39 Cal.3d 751, 761-762, the court discussed the Report of Senate Committee on Judiciary on Assembly Bill No. 26, 83 Senate Journal 4865, July 14, 1983, which provided the reasoning behind enactment of sections 4800.1 and 4800.2 and is referred to in the emergency legislation. The emergency enactment itself notes that the *Buol* decision has caused confusion and frustrates the intent of the Legislature. However, it does not appear that the confusion caused by the nonretroactive application of sections 4800.1 and 4800.2 in addition to the frustration of legislative intent provides a sufficient basis for impairing vested property rights.

In the instant case, the trial court applied sections 4800.1 and 4800.2 in its division of all the personal and real property acquired during the marriage. Specifically, the trial court awarded reimbursement to husband for all contributions made to community property which he traced to his separate property. This was error.

By placing his separate funds in a joint account which included wife's name, husband created a rebuttable presumption of equal ownership which could be "'overcome only by evidence tending to prove a common understanding or agreement that the character of the property was to be other than joint tenancy.' [Citations.] Simple tracing to a separate property source is not sufficient. [Citations.]" (*In re Marriage of Hayden, supra,* 124 Cal.App.3d 72, 77-78.)

The judgment is reversed only with respect to the property division and is affirmed in all other respects. The case is also remanded for further proceedings in accordance with the views expressed herein.[3] This includes

---

[3]In view of our disposition of this matter, husband's request to take judicial notice of the declaration of Nancy Owens-Cierly is denied as moot.

the taking of any additional evidence necessary to resolve material factual questions not previously addressed and which will aid the court in making an equitable division of the marital property.

Wife shall have her costs on appeal.

Hamlin, Acting P. J., and Azevedo, J.,* concurred.

A petition for a rehearing was denied December 22, 1986, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied February 5, 1987.

*Assigned by the Chairperson of the Judicial Council.