[No. G004031. Fourth Dist., Div.Three. Nov. 17, 1987.]

In re the Marriage of MARY LOU HOPKINS and HARRY W. AXENE.
MARY LOU HOPKINS, Respondent, v.
HARRY W. AXENE, Appellant.

COUNSEL

Leon E. Campbell for Appellant.

Marjorie G. Fuller for Respondent.

OPINION

WALLIN, Acting P. J.—Does Civil Code section 4800.2 govern in a dissolution proceeding filed after January 1, 1984, but involving property acquired before that time, where judgment was rendered prior to January 1, 1987? On constitutional grounds, we hold it does not.

The facts in this case are undisputed. In 1982, while married, Mary Lou Hopkins (Wife) and Harry Axene (Husband) purchased a Palm Desert

condominium. Although the entire $198,000 purchase price was paid by Husband from his separate property, title was taken in both parties' names, as community property.

The parties separated in June 1983 and Wife petitioned for dissolution of marriage in June 1984. The marriage was dissolved in December 1984 and trial on reserved issues was held in January 1986. At trial, Husband requested reimbursement for his separate property contribution to the condominium. He based his claim on Civil Code section 4800.2,[1] which permits reimbursement of separate property contributions to community assets, absent a written waiver of reimbursement. Although section 4800.2 was in effect when the dissolution petition was filed, the court refused to apply it because the acquisition preceded the effective date of the statute. At the time of purchase the contrary rule of *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285] controlled. Husband appeals.

In July 1983, the Legislature added section 4800.2, abolishing the long-standing rule that separate property contributions to community assets were presumed gifts to the community in the absence of a contrary agreement. (See Stats. 1983, ch. 342, §§ 1-4, pp. 1538-1539; for former rule, see *In re Marriage of Lucas, supra,* 27 Cal.3d 808.) "As the law stood [before 1983], an agreement was necessary to preserve a separate property interest in funds contributed to the acquisition of a community asset. . . . Under the new law, no agreement is needed: the tables are turned so that the separate property interest is now *preserved* unless the right to reimbursement is waived in writing." (*In re Marriage of Fabian* (1986) 41 Cal.3d 440, 450 [224 Cal.Rptr. 333, 715 P.2d 253].)

Section 4800.2 provides: "In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. . . ." Section 4800.2 and its companion, section 4800.1, were applicable to all proceedings commenced on or after January 1, 1984. (Stats. 1983, ch. 342, § 4, p. 1539.)

In *In re Marriage of Buol* (1985) 39 Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354] our Supreme Court held unconstitutional the retroactive application of section 4800.1, which required, upon dissolution, written proof that property taken in joint tenancy during marriage was actually the separate property of one spouse. Applying that section to property acquired before

---

[1] All statutory references are to the Civil Code unless otherwise specified.

the effective date of the statute impaired a vested property right without due process of law.

Shortly thereafter the Supreme Court reached a similar result with respect to section 4800.2. In *In re Marriage of Fabian, supra,* 41 Cal.3d 440 husband contributed separate property to a community property purchase. The trial court found no agreement between the parties that husband should be reimbursed upon dissolution and therefore applied the *Lucas* presumption that husband intended a gift to the community. While husband's appeal was pending, section 4800.2 was enacted. Although the court found retroactive application of section 4800.2 would decrease wife's interest in the property, a right which vested upon acquisition, it also acknowledged that "[i]mpairment of a vested property interest, alone, does not invalidate retroactive application of a statutory measure." (*Id.,* at p. 448.) Other considerations may justify such impairment: " ' "[T]he significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions." ' [Citation.]" (*Ibid.*)

With those factors in mind, the *Fabian* court concluded retroactive application of section 4800.2 was not " 'necessary to subserve a sufficiently important state interest,' " and therefore could not be constitutionally permitted. (*Ibid.*) "In *Buol,* we surveyed the legislative history of Assembly Bill No. 26 which contained both sections 4800.1 and 4800.2, and concluded that the significant state interest that compelled retroactivity . . . that of promoting ' "equitable dissolution of the marital relationship" ' by curing a ' "rank injustice" ' in the law, was lacking." (*Ibid.*) The court found the state interest in compelling the retroactivity of section 4800.2 similarly lacking.

Also considered by the *Fabian* court was the disruptive effect of applying the statute retroactively: "It is difficult to imagine greater disruption than retroactive application of an about-face in the law, which directly alters substantial property rights, to parties who are completely incapable of complying with the dictates of the new law. . . . In a case such as this one . . . it is improbable that [the writing now required by section 4800.2] would have been executed prior to the dissolution action or that it could be obtained afterwards. From the time the separate property funds were used to purchase an asset in the name of the community until after entry of the final judgment dissolving the marriage, no writing was required to preserve the community's interest in that asset. The separate property contribution automatically became a gift to the marital community unless the parties

specifically agreed otherwise. The spouse who contributed separate property to the community had no right to reimbursement and, logically, there was no requirement that any waiver of such a right be written. By the time the Legislature created the new right to separate property reimbursement which could be waived only by a writing, the parties' marriage had been terminated by a final judgment of dissolution. The spouse who asserted a separate property right adverse to the community could hardly be expected to then execute a writing waiving his right to the property he claimed." (*Id.*, at p. 450.)

The *Fabian* court expressly limited its holding to cases pending on January 1, 1984 (*id.*, at p. 451, fn. 12), leaving undecided the question of whether section 4800.2 is constitutional as applied to dissolution actions filed *after* the effective date of the statute, but involving property acquired before that time. The Legislature first expressed its views on that issue shortly after *Fabian* was decided. In April 1986, urgency legislation was enacted providing that sections 4800.1 and 4800.2 applied "to proceedings commenced on or after January 1, 1984, regardless of the date of acquisition of property subject to the proceedings or the date of any agreement affecting the property." (Stats. 1986, ch. 49, § 1; see also *In re Marriage of Griffis* (1986) 187 Cal.App.3d 156, 164 [231 Cal.Rptr. 510].)[2]

*In re Marriage of Griffis, supra,* 187 Cal.App.3d 156 considered the application of the urgency legislation in light of the Supreme Court's holdings in *Buol* and *Fabian.* Quoting "one of California's foremost family law commentators," the court noted: " '*Fabian* leaves it unclear where in the procedural time line the retroactive application of [Civil Code section] 4800.2 becomes unconstitutional. . . . [¶] Applying the reasoning of *Buol* and *Fabian* to proceedings not yet pending on January 1, 1984, is no simple task, but the better view seems to be to utilize the date the property is

---

[2] In August 1986, the Legislature again expressed its views by amending section 4800.1, effective January 1, 1987, to require written proof of separate property status with respect to *all* joint title acquisitions during marriage, not just joint tenancy acquisitions. The amendment codifies a statement of legislative intent that sections 4800.1 and 4800.2 "shall apply to all property held in joint title regardless of the date of acquisition of the property or the date of any agreement affecting the character of the property, and that that form of this section and that form of 4800.2 are applicable in all proceedings commenced on or after January 1, 1984. However, the form of this section and the form of Section 4800.2 operative on January 1, 1987, are not applicable to property settlement agreements executed prior to January 1, 1987, or proceedings in which judgments were rendered prior to January 1, 1987, regardless of whether those judgments have become final." (Stats. 1986, ch. 539, § 1.) In the case before us judgment was rendered in January 1986; thus, the latest legislative enactment does not apply and we need not express an opinion as to its constitutional validity. Instead, this case falls under the ambit of the urgency legislation enacted four months earlier.

acquired during the marriage. This is the date when, in the case of [Civil Code section] 4800.1, it becomes too late for the separatizer to get a writing rebutting the community-property presumption, and, in the case of [Civil Code section] 4800.2, it becomes too late for the community to get a written waiver of the automatic right to reimbursement.' [¶] . . . (Adams & Sevitch, Cal. Family Law Practice (1986) § D.11.5.3, subd. a., pp. D-12-D-13.)" (*In re Marriage of Griffis, supra,* 187 Cal.App.3d 156, 165.)

Bound by the Supreme Court's determination in *Buol* and *Fabian* that the legislative purpose underlying sections 4800.1 and 4800.2 was not sufficiently compelling to justify the impairment of a vested property right, the *Griffis* court held applying section 4800.2 to any property acquired before the effective date of the statute is unconstitutional, regardless of when the dissolution action was filed. "[A]ll of the property under dispute was acquired at a time when the *Lucas* rule was still in effect. 'The status of property as community or separate is normally determined at the time of its acquisition.' [Citations.] Since there was no agreement to the contrary, that property became community property as soon as it was acquired pursuant to the *Lucas* presumption. . . . [¶] If a property right vests before the enactment of a statute, such a right may not be altered except in those rare instances when it is necessary to promote a significantly important state interest." (*Id.,* at pp. 165-166.)

■ We agree with the *Griffis* court's application of *Fabian* to property acquired before January 1, 1984. Here, as in *Griffis,* Wife acquired a community property interest at a time when the only method of defeating or diminishing that right was by proof of an agreement to the contrary. By the time section 4800.2 was enacted, Husband and Wife were already separated. Wife, therefore, had little, if any, opportunity to obtain a written waiver of Husband's right to reimbursement for his separate property contribution.

The judgment is affirmed. Wife is entitled to costs on appeal.

Crosby, J., and Taylor (G.L.), J.,* concurred.

Appellant's petition for review by the Supreme Court was denied March 3, 1988.

---

* Assigned by the Acting Chairperson of the Judicial Council.