[No. S041579. Aug. 24, 1995.]

In re the Marriage of ROSE H. and NORMAN HEIKES.
ROSE H. HEIKES, Appellant, v.
NORMAN HEIKES, Respondent.

**COUNSEL**

Robert A. McFarland and Elizabeth M. Whitaker for Appellant.

Henderson & Angle, Angle, Carlson & Goldrick and Robert O. Angle for Respondent.

**OPINION**

**WERDEGAR, J.**—Former Civil Code section 4800.2 (hereafter section 4800.2), now Family Code section 2640, provides that when community property is divided upon dissolution of the marriage, either spouse shall be reimbursed for his or her contributions of separate property to the acquisition of any property being divided as community property, unless the contributing spouse has waived the right of reimbursement in writing. That right was newly created on January 1, 1984, the effective date of section 4800.2. Before then, a spouse was entitled to reimbursement only if the parties had so agreed; otherwise, any contribution of separate property to the property being divided as community property was deemed an outright gift. (*In re Marriage of Lucas* (1980) 27 Cal.3d 808, 816 [166 Cal.Rptr. 853, 614 P.2d 285].)

In *In re Marriage of Fabian* (1986) 41 Cal.3d 440 [224 Cal.Rptr. 333, 715 P.2d 253] (*Fabian*), we held that in dissolution proceedings commenced before January 1, 1984, to apply section 4800.2 retroactively, by reimbursing a spouse for making a separate property contribution to the acquisition of community property, would deprive the other spouse of a vested property right without due process of law in violation of article I, section 7, of the

California Constitution. Soon after *Fabian* was filed, the Legislature amended the statutory scheme to provide expressly that section 4800.2 would apply in dissolution proceedings commenced *after* January 1, 1984, *regardless of the date on which the community property was acquired.* (Former Civ. Code, § 4800.1 (hereafter section 4800.1), subd. (a)(3), now Fam. Code, § 2580, subd. (c).)

The issue in this post-1984 dissolution proceeding is whether the Constitution permits the statutorily authorized reimbursement of a husband for separate property contributions he made in 1976 to the property divided as community property in 1992. We conclude that, for the reasons stated in *Fabian, supra*, 41 Cal.3d 440, such reimbursement would unconstitutionally deprive the wife of a vested property right without due process of law. The only material factual distinction between this case and *Fabian* is that here, during the interval between the enactment of section 4800.2 and the commencement of the dissolution proceeding, the wife theoretically could have attempted to protect her property right by requesting the husband to execute a written waiver of his new right of reimbursement. The unlikelihood that any such attempt could succeed in this or any other marriage makes its availability too insubstantial a factor to overcome the constitutional barriers to retroactivity set forth in *Fabian*.[1]

## I.  *Facts and Procedural Background*

Norman Heikes (husband) owned a home in Santa Barbara and a vacant lot near Boron, California, as his separate property. In January 1976, while married to Rose H. Heikes (wife), he conveyed both parcels to wife and himself as joint tenants. The trial court found there was no oral or written agreement preserving any interest of husband in the parcels other than the interests created by the deeds themselves.

The present dissolution proceeding appears to have been commenced in 1990.[2] The judgment, filed December 11, 1992, classified both parcels as

---

[1] Because the trial court's judgment in the present case was entered before January 1, 1994, the operative date of the Family Code, its validity is governed by statutory provisions then in force, including sections 4800.1 and 4800.2. (Fam. Code, § 4, subd. (e).) Sections 4800.1 and 4800.2 are continued in Family Code sections 2580, 2581, and 2640 without substantive change.

[2] The date of commencement is not in the record, but the judgment recites that the court acquired jurisdiction of husband, as respondent, on November 6, 1990. From oral comments by the trial judge that wife "moved out" after an agreement, made between the parties in 1988, "didn't work," it appears that the parties separated some time between 1988 and 1990.

community property.[3] On December 17, 1992, six days after the judgment, this court filed *In re Marriage of Hilke* (1992) 4 Cal.4th 215 [14 Cal.Rptr.2d 371, 841 P.2d 891], which gave retroactive effect to the presumption, applicable on dissolution of marriage, that property acquired in joint tenancy is community property (§ 4800.1) so as to defeat Mr. Hilke's claim of a nonvested survivorship interest in real property acquired in 1969. On December 30, 1992, the present husband moved for a partial new trial, arguing that *Hilke* manifested a change of this court's views of the constitutional restrictions on retroactive application of sections 4800.1 and 4800.2 previously set forth in *Fabian, supra,* 41 Cal.3d 440, and *In re Marriage of Buol* (1985) 39 Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354].[4] The trial court accepted that argument and ordered a new trial as to the parties' respective interests in the two parcels. The Court of Appeal agreed with the trial court and affirmed the new-trial order. We granted wife's petition for review.[5]

## II.   *Classification of Parcels as Community Property*

■     Husband claims a right of reimbursement under section 4800.2, which applies in "the division of community property." ■     Since the two parcels in question were conveyed by husband in 1976 to himself and his wife as joint tenants, we first examine the basis for treating them as community property. The operative principles applicable to the residence and to the unimproved parcel differ.

### A.   *Residence*

"Until modified by statute in 1965, there was a rebuttable presumption that the ownership interest in property was as stated in the title to it. [Citations.] Thus a residence purchased with community funds, but held by a husband and wife as joint tenants, was presumed to be separate property in which each spouse had a half interest. [Citation.] The presumption arising from the form of title could be overcome by evidence of an agreement or understanding between the parties that the interests were to be otherwise.

---

[3]The parties' community property interests in the residence were made subject to a life estate held by husband's mother in a guest cottage situated at the rear of the parcel.

[4]*Buol* struck down the retroactive application of section 4800.1's provision requiring a writing to rebut the presumption, applicable on dissolution of marriage, that a residence acquired in joint tenancy with the wife's separate funds is community property.

[5]The only issue presented by wife's petition for review was the retroactivity of sections 4800.1 and 4800.2. In the Court of Appeal, wife unsuccessfully contended that the new-trial order was procedurally defective. She makes similar contentions in her brief on the merits here. We do not reach those contentions because they were not raised in the petition for review. (Cal. Rules of Court, rule 28(e)(2); *People v. Smith* (1993) 6 Cal.4th 684, 697, fn. 3 [25 Cal.Rptr.2d 122, 863 P.2d 192]; *Rangel v. Interinsurance Exchange* (1992) 4 Cal.4th 1, 7, fn. 5 [842 P.2d 82, 14 Cal.Rptr.2d 783].)

[Citations.]" (*In re Marriage of Lucas, supra*, 27 Cal.3d 808, 813 (hereafter *Lucas*).)

The presumption arising from the form of title created difficulties upon divorce or separation when a court saw fit to award a house held in joint tenancy to one spouse for use as a family residence. (*Lucas, supra*, 27 Cal.3d at pp. 813-814.) Legislation intended to overcome those difficulties was added to former Civil Code section 164 in 1965 (Stats. 1965, ch. 1710, § 1, pp. 3843-3844), and its substance was moved in 1969 to former Civil Code section 5110 (hereafter section 5110) as part of the Family Law Act. (Stats. 1969, ch. 1608, § 8, p. 3339; see *In re Marriage of Hilke, supra*, 4 Cal.4th 215, 219; *Lucas, supra*, 27 Cal.3d at p. 814.) Section 5110 provided in pertinent part: "[W]hen a single family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon dissolution of marriage or legal separation only, the presumption is that such single family residence is the community property of said husband and wife." (Stats. 1969, ch. 1608, § 8, p. 3339.)

The substance of section 5110's provision was again moved, in 1983, to the then new section 4800.1, where it was enlarged in two respects. First, the presumption that joint tenancy property acquired during marriage is community property was extended to all kinds of property, not just single-family residences. Second, the presumption could be rebutted only by a statement in the joint tenancy deed or a written agreement of the parties.[6] The 1983 statute purported to make section 4800.1 applicable in all cases "to the extent proceedings as to the division of the property are not yet final on January 1, 1984." (Stats. 1983, ch. 342, § 4, p. 1539.)

The retroactive effect of section 4800.1 was limited, however, by this court's holding in *In re Marriage of Buol, supra*, 39 Cal.3d 751 (hereafter *Buol*), where judgment dividing the community property had been entered but was not yet final on January 1, 1984. Although title to the family home

---

[6]Section 4800.1 as originally enacted provided: "For the purpose of division of property upon dissolution of marriage or legal separation, property acquired by the parties during marriage in joint tenancy form is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following: [¶] (a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof that the parties have made a written agreement that the property is separate property." (Stats. 1983, ch. 342, § 1, p. 1538.) The provision was retained in substantially identical form in subdivision (b) of section 4800.1, as amended in 1986 (Stats. 1986, ch. 539, § 1, p. 1925), except that it was enlarged to include "property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, tenancy by the entirety, or as community property." The substance of section 4800.1, subdivision (b) now appears in Family Code section 2581.

had been taken during the marriage in joint tenancy, the trial court, pursuant to the holding of *Lucas, supra,* 27 Cal.3d 808, had awarded the home to the wife as her separate property in accordance with the parties' oral agreement. Husband claimed a community interest in the home on the ground that under section 4800.1, enacted while the appeal was pending, the presumption that the property acquired in joint tenancy is community property could be overcome only by proof of a *written* instrument. This court in *Buol* unanimously rejected the claim, holding that such retroactive application of section 4800.1 would deprive the wife of a vested property right without due process of law. The following year, in 1986, the Legislature amended section 4800.1 to provide for its application to all proceedings that (unlike the proceeding in *Buol*) are commenced after January 1, 1984, except for property settlements executed, or judgments entered, before January 1, 1987. (See *post*, fn. 8.)

In the present case, the trial court found there was no agreement, oral or written, that either of the parcels in dispute was husband's separate property. Accordingly, application of either section 5110's presumption for single-family homes (explained in *Lucas*), or the broader presumption of section 4800.1, requires a finding that the residence is community property. Husband does not contend otherwise.

### B.  *Unimproved Parcel*

When husband conveyed the unimproved parcel to himself and wife as joint tenants in 1976, the only statutory provision for treating joint tenancy property as community property for purposes of division upon marital dissolution was section 5110, which applied only to a "single family residence." No such presumption was applicable at that time to unimproved land. The presumption of section 4800.1, however, enacted seven years later in 1983, applies to all joint tenancy property, including unimproved land. (See *ante*, fn. 6.)

In *Buol, supra,* 39 Cal.3d 751, we held that the provision of section 4800.1 requiring a writing to rebut the presumption that property acquired in joint tenancy is community property could not constitutionally be applied to deprive Mrs. Buol of her vested property interest without due process of law. Here, however, *Buol* does not preclude retroactive application of section 4800.1's presumption that the unimproved parcel conveyed by husband to himself and wife in joint tenancy is community property, because husband held no vested property right, as a joint tenant of the parcel, that he would not also have held as owner of a community property interest while both spouses were still alive. (See *In re Marriage of Hilke, supra,* 4 Cal.4th at p.

222 [joint tenant's survivorship interest, contingent upon surviving other joint tenant, not a vested right].) We conclude that, in accordance with section 4800.1, the trial court properly treated the unimproved lot as community property.

### III.   *Right of Reimbursement*

■■■   Husband claims reimbursement under section 4800.2 for his conveyances of the two parcels he owned separately to his wife and himself in joint tenancy, thereby making both parcels presumptively community property for purposes of dissolution. Section 4800.2 provided: "In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. . . ." The statute that originally added sections 4800.1 and 4800.2 to the Civil Code purported to make both sections applicable in all cases "to the extent proceedings as to the division of the property are not yet final on January 1, 1984." (Stats. 1983, ch. 342, § 4, p. 1539.)

In *Fabian, supra,* 41 Cal.3d 440, however, we held that "retroactive application of section 4800.2 to cases pending on January 1, 1984, impairs vested property interests without due process of law" (41 Cal.3d at p. 451). On appeal from a judgment entered in April 1982, Mr. Fabian challenged a finding that a motel acquired by the couple was community property. Enactment of section 4800.2 while the appeal was pending raised the additional question whether he should be reimbursed for the $275,000 he had invested in the motel out of his separate property.

Affirming the judgment, we denied reimbursement, noting that "for more than 20 years prior to the enactment of section 4800.2, it was well-established that, absent an agreement to the contrary, separate property contributions to a community asset were deemed gifts to the community. [Citations.]" (*Fabian, supra,* 41 Cal.3d at p. 446.) During that period, it was "[t]he basic rule . . . that the party who uses his separate property for community purposes is entitled to reimbursement from the community or separate property of the other only if there is an agreement between the parties to that effect." (*See* v. *See* (1966) 64 Cal.2d 778, 785 [51 Cal.Rptr. 888, 415 P.2d 776]; accord, *Lucas, supra,* 27 Cal.3d at p. 816.) Because the Fabians had no such agreement for reimbursement, we concluded that retroactive application of the reimbursement requirement of section 4800.2 would have impaired Mrs. Fabian's vested property interest. (*Fabian, supra,* 41 Cal.3d at p. 448.)

We next pointed out, however, that impairment of a vested property interest does not necessarily invalidate a statute's retroactive application if the impairment does not violate due process of law. (*Fabian, supra*, 41 Cal.3d at p. 448.) As in *Buol, supra*, 39 Cal.3d at page 761, we focused on the considerations material to such violation, which are outlined in *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371] (*Bouquet*). These naturally divide themselves into two groups, as follows: First: "[T]he significance of the state interest served by the law [and] the importance of the retroactive application of the law to the effectuation of that interest." (*Id.* at p. 592.) Second: "[T]he extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions." (*Ibid.*)

With respect to the relevant state interest, we concluded in *Fabian* that the need perceived by the Legislature to enhance fairness by complementing the strengthened presumption of community property (§ 4800.1) with a right of reimbursement for separate property contributions (§ 4800.2) "does not . . . represent a sufficiently significant state interest to mandate retroactivity." (*Fabian, supra*, 41 Cal.3d at p. 449.) Because the former law was not patently unfair, retroactivity was not needed to effectuate the state's interest in equitable dissolution of the marital partnership. (*Ibid.*)

We next addressed the considerations pertaining to reliance. Even though "[t]he extent of [Mrs. Fabian's] reliance on former law is difficult to pinpoint . . . , the legitimacy of such reliance is clear." (*Fabian, supra*, 41 Cal.3d at p. 449.) From 1966 until "long after the couple separated and judgment of dissolution was entered by the trial court, the law was clear and straightforward: unrestricted separate property contributions to community assets were gifts to the community" (*id.* at p. 450). As to disruptive effect, "[i]t is difficult to imagine greater disruption than retroactive application of an about-face in the law, which directly alters substantial property rights, to parties who are completely incapable of complying with the dictates of the new law. . . . By the time the Legislature created the new right to separate property reimbursement which could be waived only by a writing, the parties' marriage had been terminated by a final judgment of dissolution. The spouse who asserted a separate property right adverse to the community could hardly be expected to then execute a writing waiving his right to the property he claimed." (*Ibid.*) The scope of *Fabian*'s ultimate holding is explained in a footnote: "We hold only that application of [section 4800.2] to cases pending on January 1, 1984, impairs vested rights without due process of law." (*Id.* at p. 451, fn. 12.)

The Legislature promptly reacted to this court's pronouncements in *Buol, supra*, 39 Cal.3d 751, and *Fabian, supra*, 41 Cal.3d 440, of the constitutional

limitations on retroactive application of sections 4800.1 and 4800.2. In April 1986, within a month after the filing of *Fabian*, the Governor signed urgency legislation declaring that sections 4800.1 and 4800.2 "appl[y] to proceedings commenced on or after January 1, 1984, *regardless of the date of acquisition of property subject to the proceedings* or the date of any agreement affecting the property" (Stats. 1986, ch. 49, § 1, p. 115, italics added).[7] The urgency statute explained that sections 4800.1 and 4800.2, as enacted in 1983, had been made applicable "immediately to all family law proceedings not yet final on January 1, 1984, [their] effective date, in order to cure a serious problem in the law governing division of assets at dissolution of marriage . . . . [¶] The Buol decision [*Buol, supra*, 39 Cal.3d 751] has caused confusion among family law judges and lawyers as to what law governs in a heavily litigated area in which important property rights are affected. The decision also frustrates the intent of the Legislature to correct a serious problem in the law that is causing inequitable treatment of many parties. [¶] This act is intended to resolve the confusion created by Buol and to reaffirm the need for immediately applicable legislation, to the extent constitutionally permissible, in order to assure all litigants of equitable treatment upon dissolution of marriage. Any further delay will accentuate unreasonably the current confusion and problems in this area of the law." (Stats. 1986, ch. 49, § 2 p. 115; for the full text of the urgency statute, see *In re Marriage of Griffis* (1986) 187 Cal.App.3d 156, 164, fn. 2 [231 Cal.Rptr. 510].)

Two Court of Appeal decisions soon thereafter held that the urgency statute's mandate to apply the reimbursement requirement of section 4800.2 to community property acquired before January 1, 1984, was unconstitutional. *In re Marriage of Griffis, supra*, 187 Cal.App.3d 156, explained that the statute failed to declare any state interest in retroactive application that *Fabian, supra*, 41 Cal.3d 440, had not already found insufficient to satisfy due process. "We must presume the Supreme Court considered every possible state interest in *Buol* and *Fabian*, including those stated by the Legislature in the new law." (*In re Marriage of Griffis, supra*, 187 Cal.App.3d at p. 167.) *In re Marriage of Hopkins & Axene* (1987) 199 Cal.App.3d 288 [245 Cal.Rptr. 433] (review denied and publication ordered) quoted and followed *Griffis* and also invoked considerations of reliance. "Here, as in *Griffis*, Wife acquired a community property interest at a time when the only method of defeating or diminishing that right was by proof of an agreement to the contrary. By the time section 4800.2 was enacted, Husband and Wife were already separated. Wife, therefore, had little, if any, opportunity to obtain a written waiver of Husband's right to reimbursement for his separate property

---

[7]This modification of the chronological scope of sections 4800.1 and 4800.2 was indirect, in that the urgency statute purported to amend only uncodified section 4 of the 1983 Statutes, chapter 342, which had added sections 4800.1 and 4800.2 to the Civil Code.

contribution." (*In re Marriage of Hopkins & Axene, supra,* 199 Cal.App.3d at p. 293.)

Meanwhile, the Legislature amended section 4800.1, as of January 1, 1987, by adding a new subdivision (a), codifying expanded recitals of "a compelling state interest . . . to provide for uniform treatment of property" and providing that, regardless of the date of the property's acquisition, or of any agreement affecting title, sections 4800.1 and 4800.2 were "applicable in all proceedings commenced on or after January 1, 1984," except "property settlement agreements executed prior to January 1, 1987, or proceedings in which judgments were rendered prior to January 1, 1987" (§ 4800.1, subd. (a)(3)).[8] The Courts of Appeal, however, held that even the expanded legislative recitals in the new version of section 4800.1 were insufficient to demonstrate the compelling state interest found lacking in *Fabian, supra,* 41 Cal.3d 440. Accordingly, they continued to reject claims for reimbursement under section 4800.2 for contributions to community property made from separate property before January 1, 1984, as violative of due process, even in proceedings that had commenced after that date and had not culminated in any judgment before January 1, 1987. (*In re Marriage of Bankovich* (1988) 203 Cal.App.3d 49 [249 Cal.Rptr. 713]; *In re Marriage of Cairo* (1988) 204 Cal.App.3d 1255 [251 Cal.Rptr. 731]; *In re Marriage of Lockman* (1988) 204 Cal.App.3d 782 [251 Cal.Rptr. 434]; *In re Marriage of Craig* (1990) 219 Cal.App.3d 683 [268 Cal.Rptr. 396] [quasi-community property].)

Apart from the case now under review, the foregoing six published decisions appear to be the only ones that have considered the constitutionality of requiring reimbursement of pre-1984 separate property contributions

---

[8]Section 4800.1, subdivision (a) (now Fam. Code, § 2580), provided: "The Legislature hereby finds and declares as follows: [¶] (1) It is the public policy of this state to provide uniformly and consistently for the standard of proof in establishing the character of property acquired by spouses during marriage in joint title form, and for the allocation of community and separate interests in that property between the spouses. [¶] (2) The methods provided by case and statutory law have not resulted in consistency in the treatment of spouses' interests in property which they hold in joint title, but rather, have created confusion as to which law applies at a particular point in time to property, depending on the form of title, and, as a result, spouses cannot have reliable expectations as to the characterization of their property and the allocation of the interests therein, and attorneys cannot reliably advise their clients regarding applicable law. [¶] (3) Therefore, the Legislature finds that a compelling state interest exists to provide for uniform treatment of property; thus the Legislature intends that the forms of this section and Section 4800.2, operative on January 1, 1987, shall apply to all property held in joint title regardless of the date of acquisition of the property or the date of any agreement affecting the character of the property, and that that form of this section and that form of Section 4800.2 are applicable in all proceedings commenced on or after January 1, 1984. However, the form of this section and the form of Section 4800.2 operative on January 1, 1987, are not applicable to property settlement agreements executed prior to January 1, 1987, or proceedings in which judgments were rendered prior to January 1, 1987, regardless of whether those judgments have become final." (Stats. 1986, ch. 539, § 1, pp. 1924-1925.)

to community property under the post-*Fabian* modifications of section 4800.2. All six hold that retroactive application of the reimbursement requirement would violate due process. Yet, the present Court of Appeal refused to follow those decisions because of what it correctly characterized as "dictum" by this court in *In re Marriage of Hilke, supra,* 4 Cal.4th 215 (hereafter *Hilke*).

Mrs. Hilke died during dissolution proceedings that had been commenced in 1989, and Mr. Hilke claimed ownership of the family residence (acquired in 1969) as surviving joint tenant. Relying on *Buol, supra,* 39 Cal.3d 751, and *Fabian, supra,* 41 Cal.3d 440, he contended that the application to his claim of section 4800.1's presumption, that property held in joint tenancy is community property in the absence of a contrary written instrument, would deprive him of a vested property right without due process of law. We held that Mr. Hilke's claim "fails at the threshold" because in 1983, when section 4800.1 was enacted, his survivorship interest in the residence was subject to the condition precedent of his surviving his wife and therefore was not a vested property right. (*Hilke, supra,* 4 Cal.4th at p. 222.) We went on to point out that *Buol* and *Fabian* were factually distinguishable not only because they involved impairment of *vested* property rights, but also because the judgments in those cases were already on appeal when sections 4800.1 and 4800.2 were first enacted, whereas in *Hilke*, the dissolution proceeding commenced after that enactment.

The present Court of Appeal declared that "the statements in *Hilke* concerning the limited holding of *Fabian* are significant. They suggest our Supreme Court would apply Civil Code sections 4800.1 and 4800.2 to dissolution actions brought after the January 1, 1984, effective date of those sections, regardless of the date of the property transfers. The reliance on former law by the parties in *Fabian* and *Buol* is not present here."

In fact, however, the import of our "statements in *Hilke*" was more limited. The pertinent statements simply recognized that *Fabian*'s holding was confined to cases already pending on January 1, 1984 (*Fabian, supra,* 41 Cal.3d at p. 451, fn. 12), and that the constitutionality of impairing vested property rights acquired before that date by retroactively applying section 4800.2 in proceedings commenced after that date was still an open question in this court. To that question we now turn.

The only material difference between the facts of the present case and those of *Fabian* is the date on which the dissolution proceeding was commenced. As in *Fabian*, husband here made a contribution to the community property well before January 1, 1984, (the effective date of section 4800.2),

by conveying his separate property to wife and himself as joint tenants in 1976, thereby conferring upon wife a vested property right.[9] The issue here, as in *Fabian*, is whether the impairment of that right through enforcement of reimbursement under section 4800.2 would violate due process in light of the factors outlined in *Bouquet, supra,* 16 Cal.3d 583, pertaining to the state interest served by the law and to reliance upon the former law.

As to the relevant state interest, we concluded in *Fabian* that the perceived unfairness section 4800.2 was intended to correct did not amount to the kind of rank, patent injustice that might justify retroactive impairment of a vested property right. In the urgency statute (Stats. 1986, ch. 49, § 1, p. 115) and in the statute adding subdivision (a) to section 4800.1 (Stats 1986, ch. 539, § 1, pp. 1924-1925; see fn. 8, *ante*), the Legislature explicitly declared that application of section 4800.2 "regardless of the date of acquisition of the property" (§ 4800.1, subd. (a)(3)) was necessary to alleviate confusion and provide for uniform treatment of property. We agree with the Courts of Appeal that have considered the matter (see *ante*, pp. 1220-1221) that the legislative declarations in those statutes do not manifest state interests any more compelling than the interests *Fabian* found insufficient to justify retroactive impairment of a vested right.

The considerations pertaining to "reliance upon the former law" are "the extent . . . [and] legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions." (*Bouquet, supra,* 16 Cal.3d at p. 592.) Those considerations warrant closer scrutiny here because of the differences in chronological relationship between January 1, 1984, the effective date of section 4800.2, and the respective dates on which the dissolution proceedings in the present case and in *Fabian* were commenced.

In both *Fabian* and this case, the legitimacy of the parties' reliance upon the prior law (which denied reimbursement for separate property contributions to community property in the absence of a specific agreement to the contrary) was unmistakably clear, at least from the time the property was acquired until the enactment of section 4800.2. In *Fabian*, however, "[b]y the time the Legislature created the new right to separate property reimbursement which could be waived only by a writing, the [Fabians'] marriage

---

[9]Husband attempts to distinguish *Fabian* on the ground that there, the property was deeded to the parties "as community property," whereas here, the deeds were in joint tenancy. He argues: "The so-called 'vested property right' of one spouse in the separate property of the other spouse which is placed into joint tenancy form is due to a law-imposed presumption, which converts the separate property to community property." To the contrary, even without the "law-imposed presumption," the half interest of each joint tenant (at least while both are alive) would be as clearly a vested interest as would a half interest in community property or as tenant in common.

had been terminated by a final judgment of dissolution. The spouse who asserted a separate property right adverse to the community could hardly be expected to then execute a writing waiving his right to the property he claimed." (*Fabian, supra,* 41 Cal.3d at p. 450.) "It is difficult to imagine greater disruption than retroactive application of an about-face in the law, which directly alters substantial property rights, to parties who are completely incapable of complying with the dictates of the new law." (*Ibid.*)

Here, in contrast, the dissolution proceeding was commenced five or six years after section 4800.2 took effect. (See *ante,* fn. 2.) Accordingly, there was an interval, prior to wife's petition for dissolution, during which the parties were on notice of the existence of a statute entitling husband to reimbursement for his contribution of separate property to the parties' joint acquisition of the two parcels unless he waived reimbursement in writing. The theoretical possibility of wife's obtaining husband's written waiver during that interval, however, is too insubstantial to offset the other factors that, as in *Fabian,* call for protection of her vested property right against retroactive enforcement of husband's claim to reimbursement.

Husband's deeds of his separate property to wife and himself as joint tenants, when executed in 1976, constituted unconditional gifts. As of January 1, 1984, section 4800.2 introduced into the law a new right of reimbursement of separate property contributions to the community *in the event the community property was divided upon dissolution of the marriage.* Whatever the motives of generosity or otherwise that may have prompted husband to give wife her one-half interest in the property while they were married, he "could hardly be expected" (*Fabian, supra,* 41 Cal.3d at p. 450) to waive his newly created right to be reimbursed for his contribution in the event the marriage should break up. Short of extracting such magnanimity from her husband, there was nothing wife could do to protect her vested property right from a reimbursement claim.

Moreover, to let the retroactive application of section 4800.2 depend upon factual variations in particular parties' actual reliance on prior law would unacceptably undermine the public interest in establishing uniform, predictable rules for the division of marital property. In *In re Marriage of Craig, supra,* 219 Cal.App.3d 683, the husband contributed his separate property to the parties' purchase of a residence in 1979 in the State of Washington. The parties lived there through December 1983, then moved to California. Dissolution proceedings were commenced in 1987. The husband sought reimbursement for his 1979 contribution to the residence, which was divisible on dissolution as quasi-community property. He contended that retroactive application of section 4800.2 was proper because neither party could

have relied on California law while they were living out of state. Rejecting the contention, the Court of Appeal said that the "result husband seeks would undermine the uniformity the quasi-community property laws were enacted to establish. [¶] Actual reliance on the prior law was not the only factor cited by *Fabian* against retroactive application of section 4800.2. The opinion conceded that the extent of the wife's reliance on former law was 'difficult to pinpoint.' (*In re Marriage of Fabian*, *supra*, 41 Cal.3d at p. 449.) The court then noted that '[i]n the interest of finality, uniformity and predictability, retroactivity of marital property statutes should be reserved for those rare instances when such disruption is necessary to promote a significantly important state interest.' (*Id.*, at p. 450.)" (*In re Marriage of Craig*, *supra*, 219 Cal.App.3d at p. 686.) The reference in *Fabian* to the importance of "uniformity and predictability" has since been underscored by the Legislature's declaration of "a compelling state interest" to provide "uniformly and consistently" for "the allocation of community and separate interests" in marital property. (§ 4800.1, subd. (a); see *ante*, fn. 8.)

Section 4800.2 requires reimbursement for separate property contributions to the acquisition of any property that the court divides as community property.[10] We hold that the applicability of that requirement is limited by the due process clause to property acquired on or after January 1, 1984.

## IV. *Conclusion*

Husband's transfer in 1976 of his separate real property to the joint ownership of his wife and himself gave wife a vested property interest that cannot constitutionally be impaired through retroactive application of the reimbursement provisions of section 4800.2 that first took effect on January 1, 1984. The trial court's ruling to the contrary, affirmed by the Court of Appeal, was in error. Accordingly, the judgment of the Court of Appeal is reversed.

Lucas, C. J., Mosk, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

---

[10]The acquisition may be of any property in joint form, whether tenancy in common, joint tenancy, tenancy by the entirety, or community property (see § 4800.1, subd. (b); *ante*, fn. 6), so long as the acquired property is eventually divided as community property upon dissolution of marriage or legal separation.