[No. S127874. July 20, 2006.]

In re the MARRIAGE of MARY ANN and DARRIN FELLOWS.
MARY ANN MOYSE, Respondent, v.
DARRIN FELLOWS, Appellant.

## COUNSEL

Enochian & Kenny and Mark D. Norcross for Appellant.

Edgar J. Lana and Robert J. McNair for Respondent.

## OPINION

**CORRIGAN, J.**—We consider whether Family Code section 4502, subdivision (c),[1] applies retroactively and bars a parent from relying on laches to defend an action to enforce a child support order. We hold that it does and affirm the Court of Appeal.

### I. Facts and Procedural Background

In June 1985, a New York court ordered Darrin Fellows to pay $50.00 a week in child support to Mary Ann Moyse. Over 17 years later, Moyse registered the child support order in California. She alleged that Fellows had never made support payments and owed her $26,000 plus interest. Fellows sought to vacate the registration asserting, among other things, a laches defense.

The trial court denied Fellows's motion to vacate, confirmed the registration, and ordered arrearage payments of $20,800. The court noted that Moyse "testified that *no* child support payments were made," while Fellows "testified [that] *all* child support payments were made." Both parties "called corroborating witnesses supporting their respective testimony." The court found that Fellows failed to establish, "by a preponderance of the evidence, that the child support was paid."

The trial court applied section 4502, subdivision (c) (section 4502(c)), retroactively and disallowed the laches defense. The section, added in 2002, provides: "In an action to enforce a judgment for child, family, or spousal support, the defendant may raise, and the court may consider, the defense of laches only with respect to any portion of the judgment owed to the state." (*Ibid.*) Although the court determined that Fellows had "met his burden of proof as to the defense of laches," it concluded that the defense was statutorily unavailable.

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

The Court of Appeal affirmed, declining to follow *In re Marriage of Garcia* (2003) 111 Cal.App.4th 140 [3 Cal.Rptr.3d 370] (*Garcia*), which held to the contrary. Instead, relying on *Rice v. Clark* (2002) 28 Cal.4th 89 [120 Cal.Rptr.2d 522, 47 P.3d 300] (*Rice*), the court concluded that section 4 of the Family Code demonstrates a general legislative intent that future Family Code amendments "are to be retroactively applied." The court also noted that the Legislature's intent to right a "perceived injustice . . . dictates the retroactive application of section 4502(c)." Finally, the court concluded that subdivisions (f) and (g) of section 4 did not compel a contrary result and that retroactive application did not violate due process.

We granted review to resolve the conflict between *Garcia, supra,* 111 Cal.App.4th 140, and the Court of Appeal opinion here.

## II. Discussion

### A. *Retroactive Application of Section 4502(c)*

■ If, in light of the lapse of time and other relevant circumstances, a court concludes that a party's failure to assert a right has caused prejudice to an adverse party, the court may apply the equitable defense of laches to bar further assertion of the right. (*Nealis v. Carlson* (1950) 98 Cal.App.2d 65, 69 [219 P.2d 56].) The parties agree that section 4502(c), by its terms, bars the laches defense in a private action to enforce a child support order. They disagree over its application here. We review the retroactive application of the statute de novo. (*In re Marriage of McClellan* (2005) 130 Cal.App.4th 247, 254 [30 Cal.Rptr.3d 5].)[2]

#### 1. *Section 4502(c) Changed Existing Law*

■ As a general rule, statutes do not operate retroactively[3] "unless the Legislature plainly intended them to do so." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507] (*Western Security*).) Nonetheless, "a statute that merely *clarifies,* rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment." (*Ibid.*) Such a statute "may be applied to transactions predating its enactment without being considered retroactive" because it "is merely a statement of what the law has always been." (*Riley v. Hilton Hotels Corp.* (2002) 100 Cal.App.4th 599, 603 [123 Cal.Rptr.2d 157].)

---

[2] The parties do not dispute that section 4502(c) was retroactively applied here.

[3] We note that the cases use the terms "retroactively" and "retrospectively" interchangeably.

In determining whether a statute clarified or changed the law, we give "due consideration" to the Legislature's intent in enacting that statute. (*Western Security, supra,* 15 Cal.4th at p. 244.) The Legislature's declaration of an existing statute's meaning, while not dispositive, is a factor entitled to consideration. (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 473 [20 Cal.Rptr.3d 428, 99 P.3d 1015] (*McClung*).) We look to "the surrounding circumstances" as well as the Legislature's intent when determining whether a statute changed or merely clarified the law. (*Western Security,* at p. 243.)

Here, the Legislature intended to *change* the law. Explaining the need for the statute, both the Senate Rules Committee and the Senate Judiciary Committee observed that "the equitable defense of laches remains applicable in an action to enforce a support order." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) as amended July 2, 2002, p. 2; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) May 7, 2002, p. 2.)[4] According to the Senate Rules Committee, the enactment of section 4502(c) would "*change* that" by "substantially restricting the laches defense in support enforcement cases." (Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) as amended July 2, 2002, p. 3, italics added.) Thus, section 4502(c) would "[s]et[] forth *new* statutory restrictions on the use of the common law defense of laches in support enforcement actions." (Assem. Judiciary Com., Analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) June 25, 2002, p. 2, italics added.) In doing so, it would close "a loophole that allow[ed] child support obligors to evade responsibility for their debts." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) May 7, 2002, p. 3.) "By amending the statute to close the loophole, the Legislature sought *to change* the law." (*City of West Hollywood v. 1112 Investment Co.* (2003) 105 Cal.App.4th 1134, 1145 [130 Cal.Rptr.2d 168].)

A review of the law before the enactment of section 4502(c) confirms that the statute did effect a change. "Prior to 1992, judgments for child and spousal support expired within a stated period of years." (*In re Marriage of Fogarty & Rasbeary* (2000) 78 Cal.App.4th 1353, 1359 [93 Cal.Rptr.2d 653] (*Fogarty*).) California courts had recognized a laches defense in spousal support cases but held that the defense did not apply to claims for arrearages brought within the statutory enforcement period. (See, e.g., *DiMarco v. DiMarco* (1963) 60 Cal.2d 387, 394 [33 Cal.Rptr. 610]; *Leiden v. Hudson* (1979) 95 Cal.App.3d 72, 74–75 [156 Cal.Rptr. 849].) In 1992 and 1993, however, the Legislature made all support orders enforceable "until paid in

---

[4] (See also Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) as amended June 19, 2002, p. 6 ["laches . . . remains a viable equitable defense in a subsequent enforcement action to collect past-due child or spousal support"].)

full." (Civ. Code, former § 4384.5, now Fam. Code, § 4502, subd. (a).)[5] In doing so, the Legislature cast some doubt on the viability of the laches defense in support actions.

However, the court in *In re Marriage of Plescia* (1997) 59 Cal.App.4th 252, 262 [69 Cal.Rptr.2d 120] (*Plescia*), held that the legislative changes in 1992 and 1993 did not eliminate the laches defense in actions for spousal support arrearages. Three years later, the *Fogarty* court followed *Plescia* and recognized laches in actions for child support arrearages. (*Fogarty, supra,* 78 Cal.App.4th at p. 1364.) These precedents were consistently followed until the enactment of section 4502(c).[6] The Legislature may certainly amend a statute to overrule a judicial decision. But, in doing so it changes the law. (See *McClung, supra,* 34 Cal.4th at pp. 473–474.)

*In re Marriage of Cordero* (2002) 95 Cal.App.4th 653 [115 Cal.Rptr.2d 787], does not alter our conclusion. The *Cordero* court disagreed with the reasoning of *Plescia, supra,* 59 Cal.App.4th 252, and opined that support orders less than 10 years old would not be subject to a laches defense. (*Cordero,* at pp. 664–665.) The court acknowledged, however, that its observation was dictum. (*Id.* at p. 666, fn. 17.) Thus, there is nothing to suggest that the Legislature enacted section 4502(c) in response to any controversy created by *Cordero* on this point. Indeed, the legislative history behind section 4502(c) is replete with references to *Plescia, Fogarty, Hamer, Dancy,* and *Copeman,* but makes no mention of *Cordero.*[7] Accordingly, we conclude that the Legislature enacted section 4502(c) to change existing law, not to clarify a controversy over its interpretation.

---

[5] In 1992, the Legislature repealed and reenacted Civil Code former section 4384.5, to provide: "Notwithstanding any other provision of law, a judgment for child or spousal support, including a judgment for reimbursement or other arrearages, is exempt from any requirement that judgments be renewed. A judgment for child or spousal support, including all lawful interest and penalties computed thereon, is enforceable until paid in full." (Stats. 1992, ch. 718, § 3, pp. 3319–3320.)

The Legislature later moved this provision to Family Code section 4502, subdivision (a), which provided: "Notwithstanding any other provision of law, a judgment for child, family, or spousal support, including a judgment for reimbursement or other arrearages, is exempt from any requirement that judgments be renewed. . . ." (As added by Stats. 1993, ch. 219, § 143, p. 1650.)

[6] See *In re Marriage of Copeman* (2001) 90 Cal.App.4th 324, 332 [108 Cal.Rptr.2d 801]; *In re Marriage of Dancy* (2000) 82 Cal.App.4th 1142, 1148 [98 Cal.Rptr.2d 775]; *In re Marriage of Hamer* (2000) 81 Cal.App.4th 712, 723 [97 Cal.Rptr.2d 195].

[7] (See, e.g., Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) as amended July 2, 2002, pp. 2–3; Assem. Floor Analyses, 3d reading analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) as amended July 2, 2002, p. 1; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1658 as amended June 19, 2002, pp. 3, 5–8; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) May 7, 2002, p. 2.)

## 2. *The Legislature Intended That Section 4502(c) Apply Retroactively*

■ Before section 4502(c) became effective on January 1, 2003, a viable laches defense would have barred Moyse's claim. The statute applies to this case only if the Legislature intended to give it retroactive effect. We conclude that it did.

■ While nothing in the language or legislative history of section 4502(c) speaks directly to retroactive application, section 4 of the Family Code provides guidance. The Family Code was enacted in 1992, and made operative on January 1, 1994, to create a unified statutory scheme. (Stats. 1992, ch. 162, p. 463 et seq.) It drew together a number of statutes scattered throughout various parts of the California codes, and enacted some new provisions. Section 4 provides that, in the Family Code, the term "new law" describes either the enactment of the Family Code itself, or future modifications of the code. (§ 4, subd. (a)(1)(A) & (B).)[8] The term "old law" refers to the law in effect before the Family Code was adopted. (§ 4, subd. (a)(2).)

■ Section 4, subdivision (c) provides: "Subject to the limitations provided in this section, the new law applies on the operative date to all matters governed by the new law, regardless of whether an event occurred or circumstance existed before, on, or after the operative date, including, but not limited to, commencement of a proceeding, making of an order, or taking of an action." Thus, by its terms, section 4, subdivision (c), establishes that amendments to the Family Code apply retroactively unless otherwise provided by law.

The Law Revision Commission comment to section 4 confirms this interpretation. The comment explains that section 4 "applies both to the act that enacted the Family Code and to *any later act that changes the code*, whether the change is effectuated by amendment, addition, or repeal of a provision of the code." (Cal. Law Revision Com. com., 29C West's Ann. Fam. Code (2004 ed.) foll. § 4, p. 7, italics added.) The comment then notes: "The general rule prescribed in subdivision (c) is that a new law applies immediately on its operative date to all matters, including pending proceedings," (*ibid.*) and that section 4 governs the "substantive provisions" of the Family Code. (Cal. Law Revision Com. com., at p. 8.) Thus, as a general rule, future changes to the Family Code apply retroactively.

---

[8] Section 4, subdivision (a)(1)(A) defines "New Law" as "[t]he act that enacted this code." Subdivision (a)(1)(B) defines "New Law" as an "act that makes a change in this code, whether effectuated by amendment, addition, or repeal of a provision of this code."

We reached a similar conclusion in *Rice, supra,* 28 Cal.4th at page 100, where we held that the 1995 amendments to Probate Code section 21350 applied retroactively to "instruments executed before the amendments' effective date." Specifically, we found that section 3 of the Probate Code "mandates application of the law as amended in 1995, even though the trust and will were executed prior to that amendment's effectiveness." (*Rice,* at p. 99.) Section 4 of the Family Code is "comparable" to section 3 of the Probate Code (Cal. Law Revision Com. com., 29C West's Ann. Family Code, *supra,* foll. § 4, p. 7) and contains virtually identical language.[9] Thus, *Rice* is highly persuasive and consistent with our conclusion that section 4502(c) applies retroactively absent some exception to the rule of retroactivity found in section 4 of the Family Code.[10] *In re Marriage of Wood* (1995) 37 Cal.App.4th 1059 [44 Cal.Rptr.2d 236] is disapproved to the extent it conflicts with our opinion today, because the *Wood* court did not adequately consider the language and history of section 4.

### 3. *Section 4, Subdivisions (f) and (g) Do Not Bar Retroactive Application Here*

Notwithstanding the general rule of retroactivity established by section 4, subdivision (c), Fellows contends the exceptions found subsequently in subdivisions (f) and (g), bar such application here. The argument fails.

### a. *Section 4, Subdivision (f)*

Subdivision (f) of section 4 provides that: "No person is liable for an action taken before the operative date that was proper at the time the action was taken, even though the action would be improper if taken on or after the operative date, and the person has no duty, as a result of the enactment of the new law, to take any step to alter the course of action or its consequences." Fellows creatively argues retroactive application would impose new duties on him (1) to indefinitely preserve written proof of his compliance with the New York support order, and (2) to strictly comply with and refuse to orally modify the order. His contention lacks merit.

---

[9] As relevant here, Probate Code section 3, subdivision (c), states: "Subject to the limitations provided in this section, a new law applies on the operative date to all matters governed by the new law, regardless of whether an event occurred or circumstance existed before, on, or after the operative date, including, but not limited to, creation of a fiduciary relationship, death of a person, commencement of a proceeding, making of an order, or taking of an action."

[10] We note that section 4 is a general rule, subject to numerous exceptions. (See, e.g., § 4, subds. (d)–(h).) The Legislature may enact statutes that direct prospective application. (§ 4, subd. (b).)

Section 4502(c) placed no new duties on Fellows. Both before and after its enactment, Fellows had a duty to pay his child support, and could establish compliance through testimony alone. The elimination of a laches defense did not create some novel proof requirement. Even before the enactment, prudence would have counseled preservation of written payment records. Indeed, success on a laches claim is always uncertain because it is an equitable remedy that depends on "the facts and circumstances of the particular case." (*Austin v. Hallmark Oil Co.* (1943) 21 Cal.2d 718, 734 [134 P.2d 777].) Assertion of a laches defense seeks an equitable act of grace to relieve the burden of an existing obligation. Elimination of the defense does not create a new duty.

### b. *Section 4, Subdivision (g)*

Subdivision (g) of section 4 is also inapplicable here. It provides that "[i]f the new law does not apply to a matter that occurred before the operative date, the old law continues to govern the matter notwithstanding its repeal or amendment by the new law." (*Ibid.*) According to Fellows, subdivision (g) limits the retroactivity rule to procedural changes. He contends section 4502(c) is a substantive change and must, therefore, apply prospectively. Nothing in the text or history of section 4 suggests an intent to distinguish between procedural and substantive changes in applying the rule of retroactivity. There is no reasoned basis for adopting such a distinction especially when "California has rejected this type of classification" in determining whether a statute has retroactive effect. (*Western Security*, *supra*, 15 Cal.4th at p. 244, fn. 4.)

Instead, read together, subdivisions (c) and (g) of section 4 establish that the "old law" will govern only if the "new law" falls within the other statutory exceptions to the rule of retroactivity or does not apply to a "matter" previously governed by the "old law." Section 4502(c) does not fall within either statutory exception and applies in this action to "enforce a judgment for child . . . support."

Finally, in *In re Marriage of Garcia* (1998) 67 Cal.App.4th 693, 698–699 [79 Cal.Rptr.2d 242], the court declined to apply the 1993 amendments to the Family Code retroactively and held that the pre-1993 scheme governing support orders still controlled. *In re Marriage of Garcia, supra,* 67 Cal.App.4th 693, did not, however, consider section 4, and is disapproved to the extent it conflicts with this opinion.

### B. *Due Process*

■ Even in the face of specific legislative intent, retrospective application is impermissible if it "impairs a vested . . . right without due process of law." (*In re Marriage of Fabian* (1986) 41 Cal.3d 440, 447 [224 Cal.Rptr. 333, 715 P.2d 253], codified in section 4, subdivision (h)).)[11] Fellows was not denied due process.

■ In evaluating a due process claim, we consider two groups of factors: (1) " '[T]he significance of the state interest served by the law [and] the importance of the retroactive application of the law to the effectuation of that interest' "; and (2) " '[T]he extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions.' " (*In re Marriage of Heikes* (1995) 10 Cal.4th 1211, 1219 [44 Cal.Rptr.2d 155, 899 P.2d 1349], quoting *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371].) These considerations support retroactive application.

### 1. *State Interests*

Stating the need for section 4502(c), the sponsor noted "that over 2 million children in California are owed over $19 million [*sic*] in unpaid support, and that 'many of these children fail to thrive because there are not adequate resources to meet their basic needs.' " (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) as introduced May 7, 2002, p. 3.) According to the sponsor, " '[t]hese non-payors are escaping justice by hiding from the child support system for long enough to allow a defense of laches to shield them from ever having to pay the child support they have been court-ordered to pay.' " (*Id.,* at pp. 2–3.) Eliminating the defense of laches would close "a loophole that allows child support obligors to evade responsibility for their debts," (*id.,* at p. 3), and "strengthen the public policy favoring enforcement of an obligor's responsibility to pay support." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1658 (2001–2002 Reg. Sess.) as amended June 19, 2002, p. 9.)

---

[11] Subdivision (h) of section 4 states: "If a party shows, and the court determines, that application of a particular provision of the new law or of the old law in the manner required by this section or by the new law would substantially interfere with the effective conduct of the proceedings or the rights of the parties or other interested persons in connection with an event that occurred or circumstance that existed before the operative date, the court may, notwithstanding this section or the new law, apply either the new law or the old law to the extent reasonably necessary to mitigate the substantial interference."

Fellows concedes that the state's interests in protecting California's children and enforcing support obligations are compelling. Yet he contends that retroactive application does not serve those interests. The argument fails. Unquestionably, the availability of laches impaired the ability of a parent to collect child support. Eliminating the defense necessarily advances the state's interest in securing payment of all child support obligations. Moreover, to the extent obligor parents benefit from their efforts to evade support obligations through the use of the defense, section 4502(c) cures this "rank injustice of the former law." (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 594.) Notwithstanding his claims to the contrary, "[t]here is nothing unfair about requiring a parent to fulfill his moral and legal responsibilities." (*In re Marriage of Cutler* (2000) 79 Cal.App.4th 460, 476 [94 Cal.Rptr.2d 156].) Retroactive application is "necessary to subserve a sufficiently important state interest" (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 593), and our "inquiry need proceed no further." (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 761 [218 Cal.Rptr. 31, 705 P.2d 354].)

## 2. *Reliance*

The second group of factors is likewise unavailing. Fellows contends he reasonably relied on the availability of laches in failing to preserve written proof or to obtain judicial acknowledgment of payment. Fellows's defense did not fail for lack of proof. In fact, the trial court determined that Fellows would have prevailed if laches were available. However, his purported reliance was not reasonable, as discussed previously. The retroactive application of section 4502(c) did not "substantially interfere" with his conduct in violation of due process. (§ 4, subd. (h).)[12]

Accordingly, we also disapprove *In re Marriage of Garcia, supra,* 111 Cal.App.4th 140,[13] and hold that section 4502(c) applies retroactively to bar Fellows from asserting laches.

---

[12] Fellows also contends that section 4502(c) is overbroad because it impermissibly restricts his right to due process. Assuming that a due process claim permits an overbreadth analysis (see *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1108 [40 Cal.Rptr.2d 402, 892 P.2d 1145]), retroactive application of section 4502(c) did not violate his right.

[13] The *Garcia* court did not consider the language and history of section 4 in holding that section 4502(c) did not apply retroactively. (*Garcia, supra,* 111 Cal.App.4th 140.)

## III. Disposition

The judgment of the Court of Appeal is affirmed.[14]

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

---

[14] Because we conclude that section 4502(c) applies retroactively and bars Fellows from raising laches as a defense, we do not address Moyse's contention that the 1993 amendments to the Family Code eliminated the defense.