Filed 9/30/14  Estate of Bachels CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sierra)

| | |
|---|---|
| Estate of ANDREW BACHELS, JR., Deceased. | C073393 |
| DEBORAH SCHMIDT, | (Super. Ct. No. PR2066) |
| Petitioner and Respondent, | |
| v. | |
| MICHAEL TURNER et al., | |
| Objectors and Appellants. | |

This is a dispute over the nature of real property that was acquired by a couple as joint tenants during marriage and was not distributed in their settlement agreement upon divorce.  The parties to this action are the respective heirs, the couple now being deceased.  We shall conclude that the property retained its nature as property held in joint tenancy upon the couple's divorce.  Because the (former) husband predeceased the (former) wife, title passed to her upon his death.  We shall affirm the judgment of the trial court.

1

FACTUAL AND PROCEDURAL BACKGROUND

Jacqueline and Andrew Bachels were married in the State of New Mexico in 1962. In 1965, a gift deed was recorded for property known as the Lone Star Mine located in Sierra County, California, to "ANDREW BACHELS, JR. and JACQUELINE BACHELS, his wife in joint tenancy . . . ." The couple divorced in 1967. The divorce decree was from the State of New Mexico.

A settlement agreement of the couple's property rights was incorporated into the divorce decree. Pursuant to the settlement agreement, Andrew paid Jacqueline a lump sum for her interest in the couple's community property, which was located in New Mexico, and a description of which was attached to the agreement. No provision was made in the settlement agreement for the disposition of the Lone Star Mine.

In 1972, Andrew drafted the following: "I, Andrew Bachels here by give[] my interest in the Lone Star Mine Lots fifty, fifty one and fifty two in Section 25, twp 21N, R. 11 E.M.D.&M. to Jacqueline B. Bachels, so that she becomes sole owner to this property." The handwritten note was signed by Andrew. The trial court found it unnecessary to determine the effect of this document. Thus the trial court made no determination whether the note was a holographic will despite the apparent lack of testamentary intent, nor did it determine whether the note was an inter vivos gift. The note was found in Jacqueline's safety deposit box after her death.[1]

In 1987, Jacqueline prepared a "Declaration and Instrument of Revocable Intervivos Trust" in which she was described as a joint tenant of the Lone Star Mine. Jacqueline paid the property taxes on the Lone Star Mine from 1995 to 2012.

---

[1] Like the trial court, we need not determine whether this note was effective in transferring title to Jacqueline because we conclude the property was held by the couple as joint tenants, and Jacqueline was the surviving joint tenant. We do, however, find the note to be evidence relevant to show the intention and understanding of the parties as to the nature of their interests in the property.

Andrew died in 2006. Jacqueline died in 2011. Deborah Schmidt, the representative of Jacqueline's estate, filed a petition to determine succession to real property in the estate of Andrew Bachels, Jr. The petition was opposed by Michael and Daniel Turner, Andrew's sons.

The trial court determined the property was the separate property of Andrew and Jacqueline in equal shares because property acquired by a person after marriage "by gift, bequest, devise, or descent" is the separate property of the married person. (Fam. Code, § 770.)[2] The court found that the property was not listed in the division of property in the 1967 decree of dissolution, and that title to the property had not changed prior to Andrew's death. Thus, when Andrew died, the property automatically transferred to Jacquelyn as the surviving joint tenant. Accordingly, the trial court granted the petition.

## DISCUSSION

Appellants Michael and Daniel Turner argue the trial court erred in concluding the property was separate property. They argue that pursuant to section 2581, the property, which was acquired during marriage in joint form, was presumptively community property when the couple divorced in 1967. They further reason that since the divorce decree awarded "the community property" to Andrew, Jacqueline's interest in the property was terminated upon their divorce. This argument assumes: (1) that the Lone Star Mine was community property, and (2) that the settlement agreement transferred *all* of the couple's community property to Andrew. We shall conclude that the Lone Star Mine was not community property. Therefore, we need not reach the issue of whether the settlement agreement transferred all of the couple's community property to Andrew. Our determination that the Lone Star Mine was not community property also answers appellants' alternative argument that the property was community property that was not

---

[2] References to a code section are to the Family Code unless otherwise indicated.

3

mentioned in the divorce decree, and was therefore a tenancy in common, with each party retaining a one-half interest in the property.

Appellants' argument hinges on the application of section 2581 to the circumstances presented. That section states:

> "For the purpose of division of property on dissolution of marriage or legal separation of the parties, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property, is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following:

> "(a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property.

> "(b) Proof that the parties have made a written agreement that the property is separate property."

Only if section 2581 applies, may the property be presumed to be community property, a presumption that may be rebutted only by evidence of a written agreement or statement in the deed that the property is separate property. Only if the rebuttable presumption of section 2581 applies to the Lone Star Mine property could it have been subject to the settlement agreement Jacqueline and Andrew entered into upon their divorce transferring "the community property" to Andrew.

The critical time for the application of section 2581 was in 1967, when the couple divorced. The statute by its own terms does not apply to the characterization of property upon the death of a spouse.[3] Furthermore, section 2581 does not apply retroactively to

---

[3] Appellants point to language in section 2580, subdivision (c) which they claim makes section 2581 applicable in this case. Specifically, section 2580 states that section 2581 "appl[ies] to all property held in joint title regardless of the date of acquisition of the property or the date of any agreement affecting the character of the property, and those sections apply in all proceedings commenced on or after January 1, 1984." However, section 2581 by its own terms applies only on dissolution of marriage or legal separation.

4

deprive one spouse of a vested property right. (See *In re Marriage of Buol* (1985) 39 Cal.3d 751, 757 [former Civil Code section 4800.1 could not be retroactively applied to deprive wife of vested property right].) Although the Legislature amended former Civil Code section 4800.1, which was the precursor to section 2581, in 1986 to provide for its retroactive application, it did not apply to dissolution proceedings commenced before January 1, 1984. (*In re Marriage of Heikes* (1995) 10 Cal.4th 1211, 1217, 1221.)

Section 2581 was enacted in 1993. (Stats. 1993, ch. 219 , § 111.7, p. 1619.) It continued without substantive change former Civil Code section 4800.1. (Cal. Law Revision Com. com., reprinted at 29D West's Ann. Fam. Code (2004 ed.) foll. § 2581, p. 522.) Former Civil Code section 4800.1 was enacted in 1983. (Stats. 1983, ch. 342, § 1, p. 1538.) The relevant statute in existence when the couple divorced in 1967 was former Civil Code section 164. It stated in relevant part that property "acquired by husband and wife by an instrument in which they are described as husband and wife, *unless a different intention is expressed in the instrument*, the presumption is that such property is the community property of said husband and wife and that when a single family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon divorce or separate maintenance only, the presumption is that such single family residence is the community property of said husband and wife." (Stats. 1965, ch. 1710, § 1, pp. 3843-3844, italics added.)

Thus, when the couple divorced in 1967, the presumption that property acquired during the marriage as joint tenants was community property applied only to a family

---

Thus, even though section 2580 makes section 2581 retroactive to January 1, 1984, it does so only in dissolution or separation proceedings. Moreover, section 2580 provides that section 2581 does not apply to property settlement agreements executed and judgments rendered before January 1, 1987. The property settlement agreement and incorporating judgment in this case was executed in 1967.

residence. All other property describing the parties as husband and wife in the instrument was presumed community property only if the instrument did not express a different intent. The deed specifying ownership as joint tenants was sufficient to create a presumption that the character of the property was as stated in the form of title. (*In re Marriage of Lucas* (1980) 27 Cal.3d 808, 814 (*Lucas*), superseded by statute on another point as stated in *In re Marriage of Frick* (1986) 181 Cal.App.3d 997, 1015, fn. 10.)[4] The presumption as to the character of property held by husband and wife arose from the form of the deed, a presumption that could be rebutted by " 'substantial credible and relevant evidence showing the intention, understanding or agreement of the parties.' " (*Beck v. Beck* (1966) 242 Cal.App.2d 396, 406-407, see also *In re Marriage of Wall* (1973) 30 Cal.App.3d 1042, 1046.)

---

[4] " 'Until modified by statute in 1965, there was a rebuttable presumption that the ownership interest in property was as stated in the title to it. [Citations.] . . .' [Citation.] [¶] The presumption arising from the form of title created difficulties upon divorce or separation when a court saw fit to award a house held in joint tenancy to one spouse for use as a family residence. (*Lucas*, *supra*, 27 Cal.3d at pp. 813-814.) Legislation intended to overcome those difficulties was added to former Civil Code section 164 in 1965 (Stats. 1965, ch. 1710, § 1, pp. 3843-3844), and its substance was moved in 1969 to former Civil Code section 5110 (hereafter section 5110) as part of the Family Law Act. (Stats. 1969, ch. 1608, § 8, p. 3339; see *In re Marriage of Hilke* [(1992)] 4 Cal.4th 215, 219; *Lucas*, *supra*, 27 Cal.3d at p. 814.) Section 5110 provided in pertinent part: '[W]hen a single family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon dissolution of marriage or legal separation only, the presumption is that such single family residence is the community property of said husband and wife.' (Stats. 1969, ch. 1608, § 8, p. 3339.) [¶] The substance of section 5110's provision was again moved, in 1983, to the then new section 4800.1, where it was enlarged in two respects. First, the presumption that joint tenancy property acquired during marriage is community property was extended to all kinds of property, not just single-family residences. Second, the presumption could be rebutted only by a statement in the joint tenancy deed or a written agreement of the parties. The 1983 statute purported to make section 4800.1 applicable in all cases 'to the extent proceedings as to the division of the property are not yet final on January 1, 1984.' (Stats. 1983, ch. 342, § 4, p. 1539.)" (*In re Marriage of Heikes, supra,* 10 Cal.4th at pp. 1215-1216, fn. omitted.)

In this case, the form of title indicated the couple held the property as joint tenants, and there was no evidence rebutting the presumption that the couple held the property in any form other than as joint tenants. Rather, the subsequent note written in Andrew's hand giving "my interest" to Jacqueline "so that she becomes sole owner to this property" may be construed to infer that Andrew recognized he did not retain sole ownership of the property after the divorce, but that by giving Jacqueline his interest in the property she would become the sole owner, rather than a joint owner.

The distinguishing feature of joint tenancy is the right of survivorship. (*Estate of Blair* (1988) 199 Cal.App.3d 161, 166.) When one joint tenant dies, the entire estate automatically belongs to the surviving joint tenant. (*Grothe v. Cortlandt Corp.* (1992) 11 Cal.App.4th 1313, 1317.) Since Andrew was the first to die, the entire estate passed to Jacqueline.

## DISPOSITION

The judgment is affirmed. Petitioner shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

    BLEASE    , Acting P. J.

We concur:

    ROBIE    , J.

    DUARTE    , J.

7